**Raymond Lee MILLS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 8063.**

United States Court of Appeals
Fourth Circuit.

Argued June 8, 1960.

Decided Aug. 19, 1960.

As Amended Sept. 14, 1960.

Robert S. Bourbon and Kelley Litteral, Silver Springs, Md., for appellant.

Robert E. Cahill, Asst. U. S. Atty., Baltimore, Md. (Leon H. A. Pierson, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before SOPER and BOREMAN, Circuit Judges, and CHARLES F. PAUL, District Judge.

## BOREMAN, Circuit Judge.

Raymond Lee Mills was convicted on each of four counts of an indictment charging him with participation in the armed robbery of the Central Bank of Howard County, Clarksville, Maryland. Indicted as codefendants were Raymond's wife, Marjorie Viola Mills, and Glen Wallace O'Dell. Raymond and Marjorie Mills, upon their pleas of not guilty, were tried and convicted by the court sitting without a jury. O'Dell pleaded guilty and was sentenced. Upon motion of Raymond's counsel, the court granted an extension of four days beyond the five days fixed by Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[1] within which to move for a new trial, but no such motion was made within the enlarged period. Several days later a motion for a new trial on the ground of newly discovered evidence was filed and it is from the denial of this motion and from the judgment of conviction that Raymond Mills prosecutes his appeal.

The evidence at the trial disclosed that the Central Bank of Howard County was robbed shortly after six o'clock p. m. on November 8, 1957, by a lone armed gunman. Glen Wallace O'Dell confessed that he was the man who entered the bank and made off with the money. Escape from the scene of the crime was accomplished in a stolen car in which an accomplice of O'Dell was waiting. They then drove about a mile, abandoned the car and ran across a field, according to O'Dell's statement. O'Dell identified his accomplice as Raymond Mills and implicated Marjorie Viola Mills with the planning and preparation for the robbery.

The local law enforcement officers discovered the getaway car some thirty-five to forty minutes after the robbery on Route 29 near the home of Sam Fyock, Sr., about one mile from the bank. Shortly thereafter FBI agents from the Baltimore office arrived at the scene. In an effort to determine whether the occupants of the getaway car had been seen, the FBI agents interviewed the persons living in the surrounding area. They were told by Sam Fyock, Sr., that he first learned of the car being parked in front of his house from his son when the latter returned from the bank and that he personally saw neither the car nor its occupants. Sam Fyock, Jr., told the agents he left for the bank shortly after six o'clock p.m.; that as he was turning around in the driveway he saw a parked car with a man standing beside it; that as he stopped before entering the highway, he saw the man carrying "a zipper case" walk across the highway toward another car; that the man was 5 feet 9 inches in height, weighed 150 pounds, was 30 to 35 years of age, wore tan trousers, a plaid suit coat and no hat; and

1. Rule 33.
New Trial
"The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5-day period."

that as he was driving toward the bank he "had an impression" a car followed him for some little distance before turning off on another road.

Dolly Fyock, the daughter of Sam Fyock, Sr., told the agents that when she arrived home between 6:15 and 6:30 p.m. she noticed a parked car near her father's property, that this was not unusual and that she did not notice anybody around. Fyocks' next door neighbor, Nancy Garland, told the agents that shortly after six o'clock p.m. she was on her porch shaking rugs and saw a car parked near her house; that the lone occupant of the car got out on the passenger side and walked to the rear of the car; that just before entering the house she saw another car parked across the road; that about three minutes later she returned to the porch and saw a man who appeared to be walking toward her house until he veered off toward Fyock's house; and that she could describe neither the man as to "age, appearance, race, height, what he was wearing or anything else" nor the cars as to "make, model, color, license number, or any other thing that would identify" them. Reports of these interviews were furnished by the FBI agents to the United States Attorney when Raymond and Marjorie Mills and Glen Wallace O'Dell were arrested for the robbery some twenty-one months later.

The United States Attorney, after reviewing the FBI agents' reports, concluded that the statements of these persons were not materially pertinent to the case and did not call them to testify nor did he disclose the substance of the reports to the defense. Raymond Mills now contends that the failure of the United States Attorney to apprise the court and the defense of the contents of these reports was a withholding of vital evidence which entitles him to a new trial. The substance of the reports was first made known upon the hearing of the motion for a new trial.

■ Even assuming, for purposes of this appeal, that the withholding of the substance of the FBI reports from the court and defense was ill considered, such withholding does not entitle Raymond Mills to a new trial. The motion for new trial was not filed in this case within the five days provided by Rule 33 of the Federal Rules of Criminal Procedure, or within the additional four days by which the court enlarged the time for filing such motion. Therefore, as found by the District Court, Raymond Mills is limited in his efforts to gain a new trial to a showing of newly discovered evidence.

On the question of newly discovered evidence, the court said in Johnson v. United States, 8 Cir., 1929, 32 F.2d 127, 130:

"* * * There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. * * * *"

See United States v. Rutkin, 3 Cir., 1953, 208 F.2d 647, 649; Prisament v. United States, 5 Cir., 1938, 96 F.2d 865, 866.

■ At the hearing of the motion for new trial, Raymond Mills produced the parties whose statements the United States Attorney is accused of wrongfully withholding. As the District Court pointed out in his oral opinion at the close of the hearing, the record is not clear as to how these witnesses were discovered. Raymond Mills, of course, contends that he was only able to discover them after diligent inquiry and searching. We find nothing to support this contention.

The record indicates that Sam Fyock, Sr., was known to Raymond Mills and that since both were, or had been, in the trucking business they had, at times, "swapped favors"; that long before his

trial Raymond Mills knew the getaway car had been discovered in the vicinity of Sam Fyock's home. Additionally, Mr. Fyock testified that Raymond's mother called him before the trial and told him that Raymond had sent word for him to come to the trial if he wanted. While there is no evidence that Mr. Fyock related to her any of the details, the fact that Raymond asked Mr. Fyock to come to the trial indicates that he hoped Mr. Fyock would testify if he possessed favorable information. Having had the information as to where the getaway car was discovered and having personally known Mr. Fyock, Raymond Mills cannot be said to have exercised due diligence since he failed to follow up these leads. Mr. Fyock testified that shortly after the robbery he discussed the getaway car incident with his son, Sam, Jr., his daughter, Dolly, and Nancy Garland. It is logical to assume that had Raymond Mills followed his initial lead to Mr. Fyock, he would have learned all that these four parties knew. Therefore, we conclude that the testimony offered by these four witnesses, even though at variance with their statements to the FBI agents and more favorable to Raymond's theory of the case, does not meet the newly discovered evidence test.

Having concluded that this evidence could have been discovered by the exercise of due diligence, it is unnecessary to consider Raymond's contention that the District Court abused its discretion in determining the credibility of the witnesses who testified.

Raymond Mills next contends that at the hearing on the motion for new trial, the District Court erred (1) in refusing to compel Marjorie Mills to testify in his behalf, and (2) in claiming for Marjorie Mills, in her refusal to testify, her personal privilege guaranteed by the Fifth Amendment of the Constitution of the United States.

Marjorie Mills did not testify at the trial but two signed statements wherein she implicated herself, Raymond Mills and Glen O'Dell in the bank robbery were introduced. The court, at the con-clusion of the evidence, granted the defense motion to strike all references in the signed statements to Raymond Mills. At the hearing on the motion for new trial, Marjorie Mills was called as a witness under a proffer that she would testify that all references to Raymond Mills in her signed statements were false, and that she had stated to counsel that she would refuse to testify because she was in fear of her life if she took the stand.

The admissibility of evidence in criminal cases in the federal courts is governed by Rule 26 of the Federal Rules of Criminal Procedure. That rule, in part, provides: " * * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The most recent expression of the Supreme Court on the competency of a spouse to testify in a criminal case is Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125. At that trial the defendant's wife was permitted to testify against him over his objection. The Supreme Court, reaffirming the old common law rule, held that even though the wife did not object to testifying, admission of her testimony over his objection was error. Applying this principle to the instant case, it is clear that Marjorie Mills could not have been compelled to testify against her husband.

Raymond Mills suggests that since the proffer indicated favorable testimony, Marjorie Mills should have been compelled to testify under the doctrine of Funk v. United States, 1933, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369. In the Funk case the Supreme Court, after reviewing its earlier decisions and concluding that the reasons anciently assigned for disqaulifying a wife as a witness in behalf of her husband in criminal cases were no longer applicable, established the precedent that in federal courts the wife of a defendant on trial for a criminal

offense is a competent witness in his behalf. Contrary to Raymond's contention, we find nothing in the Funk case which requires the court to compel the spouse to testify—the Supreme Court held only that she was competent to testify. Further, under the doctrine of the Hawkins case, the trial court here would have been treading on dangerous ground had it required Marjorie Mills to testify since, as a reason for her refusal, she stated she wanted to testify *neither for nor against* her husband.

Raymond's contention that the District Court claimed for his wife the personal privilege not to testify is also without merit. While there can be no question that the privilege to refuse to testify on the ground of self-incrimination is a personal privilege to be claimed only by the individual to whom the question is addressed,[2] it is similarly beyond question that "no ritualistic formula or talismanic phrase is essential in order to invoke" this privilege.[3]

Immediately after taking the witness stand, Marjorie Mills stated that she did not want to testify "against my husband or for him." Upon being asked a specific question with regard to Raymond's participation in the robbery, she refused to answer and assigned as her ground, "On the wife's privilege." It is true that the court added that she need not testify as her testimony may have tended to incriminate her. However, since the witness relied upon the "wife's privilege" in refusing to answer the specific question and testify against her husband, we do not believe that the court's assignment of additional grounds would be tantamount to claiming the privilege for her. In United States v. Ginsburg, 7 Cir., 1938, 96 F.2d 882, certiorari denied, 1938, 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396, the District Court, in limiting the scope of cross-examination, had stated that the question should not have been

asked since the answer may have tended to incriminate the witness. The witness had claimed no privilege. The Court of Appeals, at page 885, upheld the District Court and stated that since the cross-examination was directed to a collateral issue, the ruling was correct and it was immaterial that an erroneous reason was assigned by the court.

■ After discussion and a ruling on the matters above mentioned, defense counsel inquired of Marjorie Mills if she in any way participated in the robbery. She refused to answer and, when asked to assign a ground, said "I just refuse to answer." No satisfactory explanation is offered as to the purpose of the question concerning Marjorie's participation in the crime. The proffer of Raymond's counsel indicated that Marjorie's original statement to the FBI was admitted by her to have been untrue respecting Raymond's participation but does not even suggest falsity of her statement respecting her own participation. If this were an effort to impeach the witness who was called by the defense, the question was improper. If intended as a test of credibility, it was improper since it pertained to matters wholly collateral, Marjorie not having testified at the trial and all portions of her signed statements relating to Raymond Mills having been stricken from the record.

Defense counsel suggested that they had a right to know the grounds for the refusal and the court answered that she was in a sense relying upon her personal privilege against self-incrimination. For further discussion we will assume that the question was free from objection. The sufficiency of the statement whereby the privilege against self-incrimination is claimed was the issue before the Supreme Court in both Emspak v. United States, 1955, 349 U.S. 190, 75 S.Ct. 687, and Quinn v. United States, 1955, 349 U.S. 155, 75 S.Ct. 668. Underlying both of

2. 98 C.J.S. Witnesses § 451 (1957), and cases cited therein.

3. Emspak v. United States, 1955, 349 U.S. 190, 194, 75 S.Ct. 687, 690, 99 L.Ed. 997.

See Lerner v. Casey, 1958, 357 U.S. 468, 471, n. 5, 78 S.Ct. 1311, 2 L.Ed.2d 1423; Quinn v. United States, 1955, 349 U.S. 155, 162, 75 S.Ct. 668, 99 L.Ed. 964.

these decisions is the rule, recognized by the Supreme Court, that it is sufficient if the objection is stated in language that a court or committee may reasonably be expected to understand as an attempt to invoke the privilege. The rule is further characterized by In re Friedman, D.C. S.D.N.Y.1952, 104 F.Supp. 419, 421, as follows: " * * * The plea, rather than the form in which it is asserted, determines whether the privilege against self-incrimination is to be upheld. * * * "

We conclude that the District Court may have reasonably and correctly interpreted, construed and accepted Marjorie's refusal as a claim of the privilege against self-incrimination, and the circumstances then confronting the witness and the court lend support to that conclusion. The fact that Marjorie had not been sentenced distinguishes this case from United States v. Gernie, 2 Cir., 1958, 252 F.2d 664, 670, where the witness had been convicted of the crime with which charged and sentenced. It was held he no longer was able to claim the privilege of the Fifth Amendment and could be compelled to testify. The theory in that case was that, having been convicted and sentenced, the witness could not be further incriminated by his answers. However, at the time of these proceedings in the case at bar, the period within which Marjorie Mills could prosecute an appeal of her own conviction had not expired. Moreover, the District Court had indicated that it would, in fixing her sentence, consider any additional incriminating statements made by her.

Lastly, Raymond Mills urges that he is entitled to a new trial "in the interest of justice" under the first sentence of Rule 33 [4] even though his motion for new trial on general grounds was not timely. Relying upon Benton v. United States, 88 U. S.App.D.C. 158, 188 F.2d 625, he contends "that the provision of this rule permitting a new trial if required in the interest of justice, though temperately to be utilized, is broader in scope than the limitations which have been held applicable where the Motion for New Trial is based on newly discovered evidence." But there the motion for a new trial was made within the five days following verdict.

That the provision of Rule 33 is limited in applicability to the time requirements elsewhere stated in the rule was settled in United States v. Smith, 1947, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610. In that case it was argued that because the literal language of the rule places a five-day limit only on the making of the motion for new trial, it does not limit the power of the court to grant a new trial. The Supreme Court, in rejecting this argument, stated that the Federal Rules of Criminal Procedure, in abolishing the common law limitation based on the Court Term, did not substitute indefiniteness, but prescribed the times within which the court must be confined. The time so specified is five days after verdict or such further time as the court may fix during the five-day period. Therefore, since the motion for new trial was not filed within the time specified in Rule 33 or the enlargement thereof, and since the court had no power to enlarge the time except as provided in that rule,[5] Raymond Mills' motion for a new trial could be entertained only on the ground of newly discovered evidence.

Finding no error, the judgment of conviction is

Affirmed.

4. See n. 1.

5.
Rule 45.
Time
"(b) Enlargement. When an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as ex- tended by a previous order or (2) upon motion permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect; but the court may not enlarge the period for taking any action under Rules 33, 34 and 35, except as otherwise provided in those rules, or the period for taking an appeal."
See United States v. Robinson, 1960, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259.

This opinion is not to be construed as a criticism of trial counsel in not moving for a new trial within the time permitted under Rule 33 of the Federal Rules of Criminal Procedure or enlargement thereof, and it is to be noted that counsel in this appeal entered their appearance in the case subsequent to a time when such motion could have been timely made.