**UNITED STATES of America,**
**Appellee,**

v.

**Curtis E. McCOY, Appellant.**

**No. 72-1254.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1972.

Decided May 8, 1973.

Curtis E. Von Kann, Washington, D. C., Court-appointed (Hogan & Hartson, Washington, D. C., on brief), for appellant.

David H. Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

PER CURIAM.

After having been convicted of possession, knowingly, of a check stolen from the mails in violation of 18 U.S.C.A. §§ 1708 and 1702, the defendant sought a retrial under Rule 33 F.R.Cr.P. The evidence claimed to have been newly discovered was that the principal witness for the prosecution had falsely denied ever having been arrested, when, in fact, he had recently been convicted of a somewhat similar offense.

The stolen check was one issued by American Express Company to Ray A. Walters, the operator of a restaurant in which the defendant was employed. In the normal course of business, it would

have been transmitted by mail to Walters at the restaurant.

On the afternoon of June 17, 1971, Maryland Jones was arrested in a bank in Arlington, Virginia, while attempting to negotiate the stolen check. In addition to the check, he had a Social Security card bearing the name of Ray A. Walters and a picture identification card which had been issued that day, and which carried the name of Walters but the picture of Jones.

Jones testified for the prosecution. He said he was unemployed and needed funds for the support of his family, that the defendant knew of his financial straits and overcame his reluctance to participate in the cashing of a check by the promise of half of the proceeds. According to Jones, McCoy had in his possession at that time the American Express check and the Social Security card bearing the name of Ray A. Walters. McCoy and Jones, together, went to an automobile rental agency and procured an automobile, and then proceeded to a place in the District of Columbia where the identification card was made, McCoy paying the five-dollar fee for it. They then proceeded together to the bank in Northern Virginia, where Jones entered the bank and was arrested.

The defendant took the stand in his own behalf. He stated that he left the restaurant in the early afternoon of that day in June for the stated purpose of obtaining treatment of a grease burn, that he did go to an automobile rental agency and rented an automobile, but, then, drove in it alone to an on-going party which continued through the afternoon. He denied seeing Jones that afternoon, but he admitted that he knew Jones. Indeed, significantly, he testified that he had overheard Jones resisting the importunities of another to participate in the cashing of stolen checks, at which time Jones made a statement to the effect that he had already been arrested for cashing such checks.

The prosecutor had obtained the F.B.I. record on Jones and had shown this to the defendant's counsel. It disclosed no offenses, so neither lawyer was surprised when, asked if he had ever been "arrested," Jones responded that he had not. The fact was, however, that, a few days before, he had entered a guilty plea to a lesser charge involving a forged check and had received a suspended sentence of 120 days and had been placed upon one year's probation.

It is contended on appeal that if Jones had answered the question truthfully, disclosing the recent conviction involving a forged check, his credibility would have been so adversely affected as to suggest a different result upon a retrial.

Generally, evidence which is only impeaching, though newly discovered, does not suffice to obtain a new trial.* Newly discovered evidence, however, may go so directly to the interest of the prosecution witness that, if his testimony was essential to the prosecution, a new trial should be awarded in which the interest of the witness may be shown. This was the situation in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 765, 31 L.Ed.2d 104. In that case it appeared that the primary witness for the prosecution insisted that he had not been promised immunity if he testified. The prosecutor also informed the jury that no such promise of immunity had been made to the witness. Later, however, it developed that another Assistant United States Attorney, who had handled the case at the grand jury stage, had actually promised immunity to the witness in return for his testimony. In Giglio, of course, the nondisclosure was the result of prosecutorial neglect or design, and the Supreme Court held that where the prosecution was responsible for the nondisclosure, a retrial should be ordered if the false representation of no promise might reasonably have been thought to have affected the jury's verdict.

We do not have the Giglio situation here.

---

* Mills v. United States, 4 Cir., 281 F.2d 736.

No one faults the prosecutor here. Though the defendant testified that he had heard Jones referring to a previous arrest on a check charge, both his lawyer and the Government appear to have been wholly unaware of it. Nor can the Government be faulted for procuring an F. B.I. record comfortably in advance of the trial and not taking further investigatory steps when it is clear.

Moreover, Jones filed an explanation of his answer which, given on retrial, would be largely disarming. He testified that he had never been arrested, he said, because no officer had ever taken him into custody, though twice he had voluntarily reported to a police station to answer to charges he had heard had been filed against him. He testified that he had never been in trouble, he said, because he had never been confined, and being in trouble to him was synonymous with being in jail. The 120-day suspended sentence for a minor offense and the one-year probation were simply not trouble to him.

Finally, a jury would not overlook the fact that Walters testified that the American Express Company check never came into his possession. It was intercepted before he could receive and open the envelope at the restaurant. McCoy, one of the employees, had an opportunity to do that. The jury could reasonably suppose that McCoy also had an opportunity to pick up his employer's Social Security card or to obtain a duplicate. Jones, on the other hand, was not shown to have had any opportunity, without McCoy's participation, to have come into possession either of the check or the Social Security card. The defendant did testify that he had told Jones that he might apply at the restaurant as a dishwasher, but it does not appear that Jones did or, if he had, he would have had access to the mail box or to the office where mail was placed for Walters' later review.

In short, we think the circumstances of this case so dissimilar to those in *Giglio* that we must conclude that here the later discovery by the attorneys of the fact that Jones had recently been con-victed on a plea of guilty and received a suspended sentence of 120 days and one year's probation, in light of all of the circumstances and Jones' explanation, would not likely produce a different result on retrial.

Affirmed.