## JUAN A. SMITH *v.* STATE OF MARYLAND

[No. 120, September Term, 1977 ]

*Decided July 17, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue in this criminal case is whether a non-party witness, who has pleaded guilty to a certain criminal charge but has not yet been sentenced, is entitled to invoke the Fifth Amendment privilege against self-incrimination and refuse to testify regarding that criminal charge.

In 1975, the defendant Juan Smith was arrested together with Ralph Montgomery. Both men were indicted on charges of possession of heroin and possession of heroin with intent to distribute.

Subsequently, Montgomery entered into a plea bargain with the State. The terms of this plea bargain required the State to enter a nolle prosequi on the charge of possession with intent to distribute, to make no recommendation as to sentencing, and to agree to the ordering of a pre-sentence report. Montgomery, in return, agreed to plead guilty to possession of heroin, and also agreed to "make himself available" to testify for the State in the trial of Juan Smith. In September 1976, pursuant to the plea bargain, Montgomery pleaded guilty to possession of heroin. The sentencing of Montgomery, however, was deliberately set for a date after Smith's forthcoming trial.

The State did not call Montgomery as a witness in its case in chief against Smith. The defense, however, did attempt to call Montgomery as a witness. Montgomery advised the court that he had pleaded guilty to charges arising from the same incident and was still awaiting sentencing. With the advice of counsel, Montgomery indicated his intent to refuse to testify, invoking his Fifth Amendment privilege against

self-incrimination. The trial court conducted a hearing out of the presence of the jury to determine whether Montgomery was entitled to refuse to answer on that ground. At the conclusion of the hearing, the trial court sustained Montgomery's claim of privilege.

Smith was subsequently convicted of possession of heroin with intent to distribute, and was sentenced to fifteen years' imprisonment. Smith took an appeal to the Court of Special Appeals, arguing, *inter alia,* that the trial judge erred when he permitted Montgomery to refuse to testify on the basis of the privilege against self-incrimination. The Court of Special Appeals, in an unreported opinion, affirmed Smith's conviction, and we subsequently granted Smith's petition for a writ of certiorari to consider the trial judge's ruling on Montgomery's claim of privilege. We affirm.

Smith contends that Montgomery had waived his Fifth Amendment rights with regard to the heroin charges when he pleaded guilty to the simple possession count of the indictment, and that the trial court therefore should have compelled Montgomery to testify at Smith's trial. Smith relies primarily on *Knox v. State,* 234 Md. 203, 198 A. 2d 285 (1964). *Knox* was an appeal by a witness himself who had unsuccessfully sought to exercise his privilege against self-incrimination arising under the Maryland Constitution. At the time of the attempted exercise, the witness had pleaded guilty but had not been sentenced. After he was sentenced, Knox appealed, and this Court affirmed the judgment.

In *Knox,* there was no plea bargain involved, and a principal focus of the majority opinion concerned the voluntariness of the guilty plea, 234 Md. at 206-207. Moreover, the Court viewed Knox's testimony as exculpatory rather than incriminatory, *id.* at 207. However, *Knox* is inapposite for a more fundamental reason. As the Court made clear, that case did not involve a privilege arising under the Federal Constitution *(ibid)*:

> "For [the] present purpose, we may assume that the controlling constitutional provision is Article 22 of the Maryland Declaration of Rights, and not the Fifth Amendment to the Federal Constitution."

Subsequent to the decision in *Knox,* the Supreme Court, in *Malloy v. Hogan,* 378 U. S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964), held that the Fifth Amendment privilege against self-incrimination is applicable to the states by virtue of the Fourteenth Amendment, and it is the Fifth Amendment privilege which Montgomery attempted to invoke. Thus, in determining the limits of Montgomery's privilege, the decisions under the Fifth Amendment are more pertinent.

There is support for the very broad proposition that the Fifth Amendment privilege against self-incrimination is lost or waived as a result of a plea of guilty. For example, in *United States v. Gernie,* 252 F. 2d 664, 670 (2d Cir. 1958), the court stated:

> "[T]he government had the right to compel . . . [the witness] to answer the questions as he had pleaded guilty and could not be further incriminated . . . . United States v. Romero, supra [249 F. 2d 371 (2d Cir. 1957)]; United States v. Cioffi, supra [242 F. 2d 473 (2d Cir. 1957)]."

*Gernie,* however, like many other cases setting forth the same proposition, concerned a witness who had *both* pleaded guilty *and* been sentenced on the guilty plea. In the instant case, while the witness Montgomery had entered a plea of guilty, he had not yet been sentenced. In this regard, this case more nearly resembles *Mills v. United States,* 281 F. 2d 736, 741 (4th Cir. 1960), where the court upheld a claim of Fifth Amendment privilege, stating:

> "The fact that [the subject witness had pleaded guilty but] . . . had not been sentenced distinguishes this case from United States v. Gernie, 2 Cir., 1958, 252 F. 2d 664, 670, where the witness had been convicted of the crime with which charged and sentenced. It was held he no longer was able to claim the privilege of the Fifth Amendment and could be compelled to testify. The theory in that case was that, having been convicted and sentenced, the witness could not be further incriminated by his answers. However, at the time of these proceedings

in the case at bar, the period within which ... [the witness] could prosecute an appeal of her own conviction had not expired."

*Accord, Ottomano v. United States,* 468 F. 2d 269 (1st Cir. 1972), *cert. denied,* 409 U. S. 1128, 93 S. Ct. 948, 35 L.Ed.2d 260 (1973); *State v. Johnson,* 77 Idaho 1, 287 P. 2d 425 (1955), *cert. denied,* 350 U. S. 1007, 76 S. Ct. 649, 100 L. Ed. 869 (1956); *People v. Hartley,* 22 Ill. App.3d 108, 317 N.E.2d 57 (1974); *Kohler v. Meade,* 479 S.W.2d 885 (Ky. 1972); *People v. Den Uyl,* 318 Mich. 645, 29 N.W.2d 284 (1947); *People v. Smith,* 34 Mich. App. 205, 191 N.W.2d 392 (1971); *State v. Tyson,* 43 N. J. 411, 204 A. 2d 864 (1964), *cert. denied,* 380 U. S. 987, 85 S. Ct. 1359, 14 L.Ed.2d 279 (1965); *Kniht v. Maybee,* 44 Misc. 2d 152, 253 N.Y.S.2d 59 (Sup. Ct. 1964); *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A. 2d 771 (1977); *Commonwealth v. Garland,* 475 Pa. 389, 380 A. 2d 777 (1977); *Davis v. State,* 501 S.W.2d 629 (Tex. Crim. App. 1973). *Contra, Trusty v. State,* 501 P. 2d 1142 (Okla. Crim. 1972); *Oliver v. State,* 85 Nev. 418, 456 P. 2d 431 (1969).

The Fourth Circuit in *Mills v. United States, supra,* suggested two reasons why a guilty plea does not operate as a waiver of the Fifth Amendment privilege against self-incrimination, at least until sentence has been imposed. First, as the above quotation indicates, despite the guilty plea there could be an appeal of the conviction. Second, if a person who had pleaded guilty to a crime but who had not been sentenced were compelled by his testimony to disclose the extent or nature of his participation in the crime, the trial court might be affected in determining the extent and severity of the sentence to be imposed, 281 F. 2d at 741. That is, the witness might be forced to give testimony which could subject him to a more severe penalty.

We agree, for both reasons suggested in the *Mills* case, that the Fifth Amendment privilege against self-incrimination is available to one in the position of the witness Montgomery.

Although a guilty plea waives many rights and precludes making successfully many arguments on appeal, nevertheless there are occasionally reversals of convictions

based upon guilty pleas. Thus, before one is sentenced, so that the time for an appeal has not begun to run, there is an element of danger of a new trial on the same charge.

For example, it should be noted that the instant case involves a plea bargain which was executory on the part of the State. The State in this bargain had promised Montgomery that it would "make no recommendation as to sentencing." Since Montgomery had not yet been sentenced at the time he was called to testify, the State's part of the bargain was still to be performed. Such promises are not always kept. In *Miller v. State,* 272 Md. 249, 322 A. 2d 527 (1974), this Court had occasion to consider the consequences of the State's breach of a similar agreement. We there held (272 Md. at 255):

> "[W]here a guilty plea has been induced by the prosecutor's agreement to make no recommendation as to sentencing, and the prosecutor violates that agreement, the defendant may at his option have the guilty plea vacated."

We emphasized in *Miller,* however, that certain risks were attendant to the election of such an option (272 Md. at 255-256):

> "[I]f a defendant ... desires to rescind the plea bargaining agreement and withdraw his guilty plea, he will have to plead anew to *all* of the original charges, including those which the State has nol prossed."

It is therefore clear that, in the instant case, Montgomery was exposed to a possible risk of future criminal prosecution at the time when he was asked by Smith to testify. A breach by the State of its agreement to make no recommendation as to sentencing, followed by Montgomery's election to rescind the plea bargain, could have led directly to Montgomery's being prosecuted on both counts of the original indictment. This possibility, as *Miller* illustrates, is not completely speculative.

It is evident, therefore, that Montgomery, when called to testify, had reasonable cause to fear the possibility of a

subsequent prosecution concerning events about which he would be required to testify in Smith's trial. Inasmuch as many cases hold that the prior testimony of a defendant will be admitted against him, even though given as a witness in a prior criminal proceeding against another, Montgomery could reasonably conclude that there was a danger that his testimony might be used against him. *See, e.g., United States v. Block,* 88 F. 2d 618 (2d Cir. 1937), *cert. denied,* 301 U. S. 690, 57 S. Ct. 793, 81 L. Ed. 1347 (1937); *Commonwealth v. Garland, supra,* 380 A. 2d at 779-780.

This possibility is sufficient to justify Montgomery's claim of privilege. For a witness to be entitled to invoke the privilege against self-incrimination, it is not necessary that his testimony will with certainty lead to further criminal conviction. Rather, there must only be "reasonable cause to apprehend danger," *Hoffman v. United States,* 341 U. S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). The Supreme Court went on in *Hoffman* to state (341 U. S. at 486-487):

> "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

The Court in *Hoffman* reversed a contempt conviction of a witness who refused to answer certain questions on the ground that "it was not '*perfectly clear* . . . that the answer[s] *cannot possibly* have such tendency' to incriminate." 341 U. S. at 488. In light of this standard, it cannot reasonably be concluded that there was no danger that Montgomery's testimony might have injured him in a subsequent trial on the criminal charges involved.

Furthermore, apart from the possibility of another criminal trial on the charges against Montgomery, we believe that the Fifth Amendment's protection against self-incrimination extends to situations where increased punishment might befall a witness. The Supreme Court's view of the scope of the privilege against self-incrimination has been consistently

broad. In *Counselman v. Hitchcock,* 142 U. S. 547, 562-564, 12 S. Ct. 195, 35 L. Ed. 1110 (1892), the Court observed, in extending the Fifth Amendment's protection to non-party witnesses: ·

> "It is impossible that the meaning of the constitutional provision can only be, that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard.

> \* \* \*

> "It is an ancient principle of the law of evidence, that a witness shall not be compelled, in any proceeding, to make disclosures or to give testimony which will tend to incriminate him *or subject him to fines, penalties, or forfeitures.*" (Emphasis supplied.)

More recently, in *In re Gault,* 387 U. S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967), the Court reiterated that the concern of the Fifth Amendment's privilege against self-incrimination was as much with the imposition of punishments as with formal criminal prosecutions (387 U. S. at 49, emphasis supplied):

> "It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person 'shall be compelled in any *criminal case* to be a witness against himself.' However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection

is invoked, but upon the nature of the statement or admission *and the exposure which it invites.* The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory."

And later, after pointing out that the proceedings before it, "which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination" *(ibid.),* the Supreme Court went on *(id.* at 50):

"[C]ommitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' And our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty — a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom."

*See also Matter of Spalding,* 273 Md. 690, 702-704, 332 A. 2d 246 (1975).

Turning to the instant case, since Montgomery at the time of Smith's trial had not been sentenced on his plea of guilty to possession of heroin, his testimony might have been considered in determining whether he would receive probation or be committed to an institution and, if the latter, in determining the length of such commitment. It cannot be said that "the exposure which [such testimony] invites," *In re Gault, supra,* 387 U. S. at 49, was insufficient for the availability of the privilege.

*Judgment affirmed.*
*Petitioner to pay costs.*