528 A.2d 1271

Clinton W. ELLISON

v.

STATE of Maryland.

No. 3, Sept. Term, 1986.

Court of Appeals of Maryland.

Aug. 3, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

ELDRIDGE, Judge.

We granted a petition for a writ of certiorari in this criminal case to review an opinion and decision by the Court of Special Appeals concerning the right of a non-party witness, who has been found guilty and sentenced on a criminal charge, to invoke the privilege against self-incrimination and refuse to testify on matters relating to that criminal charge. It appeared that the Court of Special Appeals' opinion in the present case was in conflict with that court's earlier opinion in *McClain v. State,* 10 Md.App. 106, 114, 268 A.2d 572, *cert. denied,* 259 Md. 733 (1970), and with our opinion in *Smith v. State,* 283 Md. 187, 388 A.2d 539 (1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979).

The petitioner in this case, Clinton W. Ellison, was an inmate in the Maryland Penitentiary at the time of the criminal offenses giving rise to this case. Ellison and another inmate, Tyrone Little, were charged in the Circuit

---

* Smith, J., and Couch, J., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

Court for Baltimore City with the murder and robbery of a third inmate, Charles Sneed. The indictments also charged lesser included substantive offenses; there were, however, no charges of conspiracy to murder or rob Sneed. In both the *Ellison* case and the *Little* case, the State filed notices of intent to seek the death penalty.

The two prosecutions were severed, and the case against Little was tried first. During jury deliberations at the guilt/innocence phase of Little's trial, the State and Little negotiated a plea agreement which was approved by the court. *See* Maryland Rule 4–243. Under the plea bargain, Little agreed to plead guilty to second degree murder; the State agreed to nol pros the first degree murder, robbery and lesser charges in the indictment, and the State agreed to recommend a twenty-five year sentence for second degree murder, to run concurrently with the sentence Little was then serving. Thereafter, in accordance with the agreement, Little pled guilty to second degree murder and received a twenty-five year concurrent sentence, and the State nol prossed the other charges in the indictment.

At the conclusion of Little's trial, immediately following the imposition of sentence, Little was specifically advised that he could apply to the Court of Special Appeals for leave to appeal, and he was further advised, in the event leave to appeal were granted, of the issues which could be raised on appeal notwithstanding his guilty plea. He was also advised, *inter alia*, that he had thirty days in which to request a three-judge panel of the circuit court to review his sentence. *See* Code (1957, 1982 Repl.Vol.), Art. 27, §§ 645JA–645JG; Rule 4–344.

Little's trial had concluded with the imposition of sentence and the advice concerning further review, on June 18, 1984. The petitioner Ellison's trial began one week later, on June 25, 1984.

During the guilt/innocence phase of Ellison's trial, and before the expiration of the thirty-day period within which Little could have filed an application for leave to appeal

under Rule 1096 or an application for sentence review under Rule 4–344, Ellison called Little to the stand as a witness for the defense. Little, however, refused to testify "on the grounds that it might incriminate me." The trial court, out of the jury's presence, heard from Little's attorney, examined Little, and heard extensive argument from the prosecuting and defense attorneys. The defense attorney made clear the subject about which he wanted to question Little: "I want to ask him what his involvement was with Charles Sneed [the victim] or anything to do with Sneed's death." Thereafter, the trial court upheld Little's claim of privilege.

Ellison was found guilty of first degree murder and robbery. After a separate sentencing proceeding, the jury determined that the sentence for murder should be life imprisonment rather than death. In addition, the trial court imposed a consecutive ten year sentence for robbery.

Ellison appealed, contending, *inter alia,* that the trial court erred in upholding Little's invocation of the privilege against self-incrimination. Ellison argued in the Court of Special Appeals that Little could not have incriminated himself in connection with the charges for which he had been indicted because he had already been sentenced on the murder charge, and the other charges had been nol prossed. Ellison further argued that Little had no basis to fear new criminal charges growing out of the same matter, such as conspiracy, as any new charges would be precluded by double jeopardy principles or by the plea bargain.

The State argued in the Court of Special Appeals that Little was entitled to invoke the privilege against self-incrimination with regard to matters underlying the criminal case that had been brought against him. Relying on this Court's opinion in *Smith v. State, supra,* 283 Md. 187, 388 A.2d 539, the State's primary contention was that, because of the possibility of appellate reversal and a new trial on the same charges, Little had reasonable cause to fear that his testimony might incriminate him with regard to those charges. Alternatively, the State suggested the possibility

that additional charges, for example a charge of conspiracy to murder Sneed, might be brought against Little.

The Court of Special Appeals affirmed Ellison's conviction, *Ellison v. State,* 65 Md.App. 321, 500 A.2d 650 (1985). While ultimately deciding that Little was entitled to invoke the privilege against self-incrimination (65 Md.App. at 345, 500 A.2d 650), the greater part of the Court of Special Appeals' opinion on this matter (*id.* at 324–345, 500 A.2d 650) was devoted to rejecting the State's principal argument. The Court of Special Appeals began with a premise that testimonial privileges, including the privilege against self-incrimination, are disfavored and that, therefore, when a court is "close to the line," it should " 'tilt' toward finding the privilege inapplicable," 65 Md.App. at 327, 500 A.2d 650. After pointing out that the witness Little had been sentenced when he claimed the privilege in Ellison's trial, the appellate court stated that the issue in the case was "[a]t what point on the continuum is the process of incrimination sufficiently complete that the risk of incrimination is relegated to the past tense?" *Id.* at 329, 500 A.2d 650. The Court of Special Appeals concluded by holding, with regard to the offenses Little had been charged with, "that the risk of incrimination terminates at the moment the sentence is pronounced" (*id.* at 338, 500 A.2d 650) and that "[a]s to this aspect of his contention, ... the appellant is absolutely right" (*id.* at 345, 500 A.2d 650). The intermediate appellate court stated that the imposition of sentence is the "logical termination point" for the witness's risk of incrimination and right to invoke the privilege, because the danger of future "jeopardy" after the moment of sentence is a "mere remote possibility" and "beyond the contemplated pale of the constitutional privilege" (*id.* at 344, 500 A.2d 650).

Nevertheless, the Court of Special Appeals, agreeing with the State's alternate argument, decided that the witness Little had been entitled to invoke the privilege against self-incrimination. The appellate court explained (65 Md. App. at 345, 500 A.2d 650):

"... Tyrone Little still ran a real risk of incrimination, if compelled to testify, because he might be revealing his complicity in other crimes not yet charged. Easily foreseeable, ... was the possibility that the State could charge him with conspiracy to murder Charles Sneed. *United States v. Miranti*, 253 F.2d 135 (2d Cir.1958); *United States v. Johnson*, 488 F.2d 1206 (1st Cir.1973). There was also a real possibility that the testimony would have revealed the existence of an unlawful homosexual relationship between the witness Little and the appellant, with a variety of criminal charges possibly stemming therefrom."

As previously indicated, we granted Ellison's petition for a writ of certiorari in order to review the self-incrimination question. Both parties in this Court advance the same arguments that were made to the Court of Special Appeals. In our view, the State correctly argues that, under this Court's reasoning in *Smith v. State, supra*, the witness Little was entitled to invoke the privilege against self-incrimination because the thirty-day period for further review of his conviction and sentence had not expired. Therefore, there was a sufficient possibility of a new trial or new sentencing on the charges which had been brought against him. Thus, while we shall affirm the Court of Special Appeals' decision, we disapprove of its opinion on this matter.

In *Smith v. State, supra*, the defendant Smith and the witness Montgomery had been arrested together and charged with various substantive drug offenses. As in the instant case, Montgomery entered a plea bargain with the State and pled guilty to one of the drug charges. Smith was then tried, and Montgomery was called as a witness by the defense. At this time, Montgomery, although convicted, had not been sentenced. Montgomery refused to testify, invoking the privilege against self-incrimination under the Fifth Amendment to the federal constitution, and the trial court sustained the claim of privilege. The Court of Special Appeals in an unreported opinion held that Mont-

gomery's claim of privilege was properly sustained, relying upon an earlier opinion in the Court of Special Appeals in which Chief Judge Murphy had stated for that court (*McClain v. State, supra,* 10 Md.App. at 114, 268 A.2d 572):

> "It is well settled that a witness may invoke his privilege against self-incrimination where, as here, the criminal action against him is still pending, as where an appeal is outstanding. *See State v. Johnson* [, 77 Idaho 1,] 287 P.2d 425; *People v. Den Uyl* [, 318 Mich. 645,] 29 N.W.2d 284; *Knight v. Maybee* [, 44 Misc.2d 152,] 253 N.Y.S.2d 59; *Prentice v. Hsu,* 280 F.Supp. 384 (S.D.N.Y.); *Stallings v. State* [, 136 Ga. 131,] 70 S.E. 1015 (motion for new trial pending). *See also Pope v. State,* 7 Md.App. 533 [, 256 A.2d 529] *Poling v. State,* 6 Md.App. 45 [, 250 A.2d 126] *Farmer v. State,* 5 Md.App. 546 [, 248 A.2d 809.] *Cf. Knox v. State,* 234 Md. 203 [, 198 A.2d 285] and note, 9 A.L.R.3d 990.

This Court in *Smith* agreed with the position of the Court of Special Appeals and decided that the privilege against self-incrimination was available to one in the position of the witness Montgomery. Initially, our *Smith* opinion pointed to the general rule that the privilege against self-incrimination with respect to particular charges is not available to a witness whose prosecution on those charges has terminated by a guilty verdict and sentence, and we cited *United States v. Gernie,* 252 F.2d 664, 670 (2d Cir.), *cert. denied,* 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958), as illustrative of the general rule. *Smith v. State, supra,* 283 Md. at 190, 388 A.2d 539. We went on, however, to quote with approval the Fourth Circuit's distinction of *Gernie* in *Mills v. United States,* 281 F.2d 736, 741 (4th Cir.1960), as follows (283 Md. at 190–191, 388 A.2d 539):

> " 'The fact that [the subject witness had pleaded guilty but] ... had not been sentenced distinguishes this case from *United States v. Gernie,* 2 Cir.1958, 252 F.2d 664, 670, where the witness had been convicted of the crime with which charged and sentenced. It was held he no longer was able to claim the privilege of the Fifth Amend-

ment and could be compelled to testify. The theory in that case was that, having been convicted and sentenced, the witness could not be further incriminated by his answers. However, at the time of these proceedings in the case at bar, *the period within which ... [the witness] could prosecute an appeal of her own conviction had not expired.'*" (Emphasis added).

Consequently, a witness whose time for appeal had not expired was deemed to fall within an exception to the general rule and was entitled to claim the privilege against self-incrimination.

The *Smith* opinion then cited numerous cases in accord, including many where the privilege against self-incrimination was held available to a witness who had been sentenced but where the time for appeal had not expired or where there was an appeal pending. 283 Md. at 191, 388 A.2d 539. This Court went on in *Smith* to agree with the *Mills* opinion and the other cases (*id.* at 191–192, 388 A.2d 539, emphasis added):

"The Fourth Circuit in *Mills v. United States, supra,* suggested two reasons why a guilty plea does not operate as a waiver of the Fifth Amendment privilege against self-incrimination, at least until sentence has been imposed. *First,* as the above quotation indicates, *despite the guilty plea there could be an appeal of the conviction.* Second, if a person who had pleaded guilty to a crime but who had not been sentenced were compelled by his testimony to disclose the extent or nature of his participation in the crime, the trial court might be affected in determining the extent and severity of the sentence to be imposed, 281 F.2d at 741. That is, the witness might be forced to give testimony which could subject him to a more severe penalty.

"We agree, *for both reasons suggested in the* Mills *case,* that the Fifth Amendment privilege against self-incrimination is available to one in the position of the witness Montgomery.

"Although a guilty plea waives many rights and precludes making successfully many arguments on appeal, nevertheless there are occasionally reversals of convictions based upon guilty pleas. *Thus, before one is sentenced, so that the time for an appeal has not begun to run, there is an element of danger of a new trial on the same charge.*"

The *Smith* opinion continued by discussing illustrative situations where convictions based on plea bargains and guilty pleas had been reversed on appeal and new trials on the original charges had been ordered. *Id.* at 192–193, 388 A.2d 539. The Court in *Smith* concluded that, under the principles enunciated by the Supreme Court in *Hoffman v. United States,* 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), the possibility of a subsequent trial on the same criminal charges was sufficient to uphold the witness's invocation of the privilege against self-incrimination. We stated (283 Md. at 193, 388 A.2d 539):

"This possibility is sufficient to justify Montgomery's claim of privilege. For a witness to be entitled to invoke the privilege against self-incrimination, it is not necessary that his testimony will with certainty lead to further criminal conviction. Rather, there must only be 'reasonable cause to apprehend danger,' *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The Supreme Court went on in *Hoffman* to state (341 U.S. at 486–487 [, 71 S.Ct. at 818) ]:

'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'

The Court in *Hoffman* reversed a contempt conviction of a witness who refused to answer certain questions on the ground that 'it was not *"perfectly clear* ... that the answer[s] *cannot possibly* have such tendency"* to incriminate.' 341 U.S. at 488 [, 71 S.Ct. at 819.] In light of this standard, it cannot reasonably be concluded that there

was no danger that Montgomery's testimony might have injured him in a subsequent trial on the criminal charges involved."[1]

Consequently, the first and primary reason for the decision in *Smith* was that the possibility of appellate reversal and new proceedings on the criminal charges was sufficient to justify the witness's invocation of the privilege against self-incrimination. This reason was applicable to the witness Montgomery in *Smith* because, until one is sentenced, the time for appeal does not begin to run. The instant case is factually different from *Smith* in that the witness Little had been sentenced. Nevertheless, the reasoning of *Smith* is fully applicable to the witness Little and justified his claim of privilege. At the time Little was called to testify, the thirty-day appeal period had not expired, and, therefore, the possibility of appellate reversal existed. The same reasoning is also applicable to a witness who has been sentenced and whose appeal is pending, *McClain v. State, supra,* 10 Md.App. at 114, 268 A.2d 572. *See also Maziarz v. State,* 302 Md. 1, 7, 485 A.2d 245 (1984).

The overwhelming majority of cases dealing with the subject in recent years are in accord with the *Smith* and *McClain* opinions, and are contrary to the Court of Special Appeals' opinion in the instant case. They take the position that a witness who has been found guilty and sentenced on

---

1. The Court of Special Appeals in the case at bar took the position that the principles delineated by the Supreme Court in *Hoffman* have "no bearing upon the ... issue of when, upon the time line, incrimination is completed." *Ellison v. State, supra,* 65 Md.App. at 336, 500 A.2d 650. While *Hoffman* itself did not involve a factual situation like that in the present case, the Supreme Court was dealing with *general* principles, applicable to a wide variety of circumstances, for determining when the risk of incrimination is sufficient for the invocation of the Fifth Amendment privilege. We are aware of no reason or authority for singling out a particular situation, like that in the instant case, and declaring that it is exempt from the general principles of *Hoffman. Smith,* as well as numerous other cases throughout the country, have applied the *Hoffman* principles in determining whether a witness who has been prosecuted on criminal charges is still in danger of incriminating himself and thus entitled to claim the privilege.

criminal charges is entitled to claim the privilege against self-incrimination with regard to matters underlying those charges while the time for appeal or sentence review is running, or while a direct appeal or sentence review is pending. For example, *In re Courtney S.*, 130 Cal.App.3d 567, 573, 181 Cal.Rptr. 843, 846 (1982), involved the same situation as here, where a party called as a witness one who had pled guilty and been sentenced on criminal charges, where the time for appeal had not run, and where the witness invoked the privilege against self-incrimination. In rejecting the appellant's contention that the claim of privilege should not have been sustained, the California court stated (130 Cal.App.3d at 573, 181 Cal.Rptr. 843): "The first contention runs counter to the established rule that a witness retains the privilege during the pendency of an appeal.... Since [the witness] still had the right to appeal at the time his testimony was sought, the privilege was still available to him." *See, e.g., Taylor v. Best*, 746 F.2d 220, 222 (4th Cir.1984), *cert. denied*, 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985) ("We will not undercut [the witness's] right to appeal ... by prematurely assessing the merits of his appeal in a collateral proceeding. If [the witness's] conviction were overturned on appeal, post-conviction evidence ... might be used against him"); *Ottomano v. United States*, 468 F.2d 269, 273–274 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973) (a pending sentence review motion was sufficient to allow sentenced witness to claim privilege against self-incrimination); *Holsen v. United States*, 392 F.2d 292, 293 (5th Cir.1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 640, 21 L.Ed.2d 573 (1969) (as witness "was a co-defendant who was then in the process of appealing his conviction," he was entitled to the privilege); *State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023, 1051 (1980) (Fifth Amendment privilege available to witness "when his conviction or sentence is being appealed"); *People v. Lopez*, 110 Cal.App.3d 1010, 1021, 168 Cal.Rptr. 378, 385 (1980) (appeal pending and, therefore, witness entitled to claim privilege); *Stehling v. State*, 391 So.2d 287, 288

(Fla.App.1980) (conviction and sentence upon nolo contendere plea, and court held that the "privilege continues until sentence has been pronounced and an appeal has been foregone or completed"); *State v. Johnson,* 77 Idaho 1, 287 P.2d 425, 429–430 (1955), *cert. denied,* 350 U.S. 1007, 76 S.Ct. 649, 100 L.Ed. 869 (1956); *Kohler v. Meade,* 479 S.W.2d 885, 888 (Ky.1972); *State v. Darby,* 403 So.2d 44, 48 (La.1981), *cert. denied,* 454 U.S. 1152, 102 S.Ct. 1022, 71 L.Ed.2d 308 (1982); *People v. Robertson,* 87 Mich.App. 109, 273 N.W.2d 501, 503 (1978); *People v. Lindsay,* 69 Mich. App. 720, 245 N.W.2d 343, 344 (1976); *Knight v. Maybee,* 44 Misc.2d 152, 253 N.Y.S.2d 59, 62–63 (1964); *State v. Rawls,* 252 Or. 556, 557, 451 P.2d 127, 128 (1969); *Davis v. State,* 501 S.W.2d 629, 630–631 (Tex.Crim.App.1973); *State v. Harris,* 92 Wis.2d 836, 285 N.W.2d 917, 922–924 (1979). *See also Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771, 780 (1977) ("the weight of authority permits a witness whose conviction has not been finalized on direct appeal to invoke the privilege against self-incrimination and refuse to testify about the subject matter which formed the basis of his conviction").

In support of its position, the Court of Special Appeals relied on general language in *Namet v. United States,* 373 U.S. 179, 188, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963), and *Reina v. United States,* 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960), that once a person has "pled guilty" (*Namet*) or been "convicted" (*Reina*) of a crime, he no longer may claim the privilege against self-incrimination with regard to that crime. Neither case, however, involved the issue now before us or the question of when the "conviction" is sufficiently final that the privilege against self-incrimination is lost. As pointed out by the United States Court of Appeals for the Fifth Circuit in *Taylor v. Best, supra,* 746 F.2d at 222, in the situation where the conviction may be reversed on appeal, "the ordinary rule referred to in *Reina* does not apply."

The Court of Special Appeals in the present case also relied on several opinions from the United States Courts of

Appeal and the courts of other states. In our view, none of these cases supports the position of the court below. In some of the cases relied upon, the witnesses had been sentenced, and there were no indications from the opinions that there remained time for an appeal or that an appeal was pending; it would appear that the courts were dealing with final unappealed criminal judgments. *See United States v. Gernie, supra,* 252 F.2d at 670; *United States v. Cioffi,* 242 F.2d 473, 477 (2d Cir.), *cert. denied,* 353 U.S. 975, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957); *United States v. Romero,* 249 F.2d 371, 375 (2d Cir.1957); *State v. Nelson,* 246 Or. 321, 424 P.2d 223, 224, *cert. denied,* 389 U.S. 964, 88 S.Ct. 340, 19 L.Ed.2d 379 (1967) (witness was sentenced and then did testify at co-defendant's trial; it was later, at co-defendant's second trial, that witness attempted to invoke privilege).[2] *See also United States v. Hoffman,* 385 F.2d 501, 503, 504 (7th Cir.1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968) (witness called to testify nine months after his conviction).

The remaining cases relied upon by the Court of Special Appeals involved circumstances like those in *Smith v. State, supra,* 283 Md. 187, 388 A.2d 539, where the witnesses had not been sentenced when called to testify, and the courts upheld their right to claim the privilege against self-incrimination. *See People v. Smith,* 34 Mich.App. 205, 191 N.W.2d 392, 394–395 (1971), *aff'd,* 396 Mich. 362, 240 N.W.2d 245 (1976); *State v. Tyson,* 43 N.J. 411, 204 A.2d 864, 866–867 (1964), *cert. denied,* 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965); *Com. v. Garland,* 475 Pa. 389, 380 A.2d 777, 779–780 (1977); *State v. McConnohie,* 121 Wis.2d 57, 358 N.W.2d 256, 260–262 (1984). None of these cases held or indicated that the privilege would be lost after sentencing and during the time for appeal or while an

---

**2.** In addition, the Supreme Court of Oregon has clearly taken the position that a sentenced witness whose case was on appeal was entitled to claim the privilege against self-incrimination. *State v. Rawls,* 252 Or. 556, 557, 451 P.2d 127, 128 (1969). *See also State v. Sutterfield,* 45 Or.App. 145, 607 P.2d 789, 790 (1980).

appeal was pending. On the contrary, the reasoning in all four cases suggests that the claim of privilege would be sustained during the time for appeal or pending an appeal. The possibility of incrimination mentioned in the opinions related to the verdicts and not just the sentences. Thus, the Michigan court in *People v. Smith, supra,* 191 N.W.2d at 394, pointed out that the witness "might still have withdrawn his guilty plea or prosecuted an appeal." The Supreme Court of New Jersey in *State v. Tyson, supra,* 204 A.2d at 867, emphasized that the guilty plea "is not, in every case, irrevocable" and that there might be a new trial on the charges. The same point was made in *Com. v. Garland, supra,* 380 A.2d at 780. And in *State v. McConnohie, supra,* 358 N.W.2d at 260–261, the Supreme Court of Wisconsin quoted extensively, with approval, the reasoning in *Mills v. United States, supra,* 281 F.2d at 740–741, and *Smith v. State, supra,* 283 Md. at 188–193, 388 A.2d 539.[3]

As earlier mentioned, the Court of Special Appeals stated that it is "logical" to terminate a witness's right to invoke the privilege at the moment of sentencing because, in that court's view, the likelihood of future "jeopardy" with regard to the offense is a "mere remote possibility." We, along with virtually every other court discussing the matter, disagree. While a majority of appeals by defendants in criminal cases may not result in reversals and further proceedings, a criminal defendant's chance of overturning a verdict or sentence on appeal certainly does not fall into the category of a mere remote possibility. For example, in the two most recent bound volumes of the Maryland Appellate Reports (68 Md.App. and 69 Md.App.) there were thirty-two

---

**3.** It is also noteworthy that the courts in Michigan, Pennsylvania, and Wisconsin have clearly taken the position that a witness's right to invoke the privilege against self-incrimination regarding an offense is applicable during the time for appeal or while an appeal is pending from a conviction for that offense. *See People v. Robertson,* 87 Mich.App. 109, 273 N.W.2d 501, 503 (1978); *People v. Lindsay,* 69 Mich.App. 720, 245 N.W.2d 343, 344 (1976); *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771, 780 (1977); *State v. Harris,* 92 Wis.2d 836, 285 N.W.2d 917, 922–924 (1979).

reported Court of Special Appeals' cases involving appeals by defendants in criminal cases. Of these, only fifteen were affirmed entirely; in six the verdicts were affirmed but sentences were vacated; in three, the verdicts were affirmed in part and reversed in part; and eight cases resulted in the judgments being entirely reversed or vacated.

In addition to the right to seek appellate review within thirty days after sentencing, a criminal defendant during that thirty-day period may also petition a three-judge panel of the circuit court to review his sentence, and the panel may increase as well as reduce the sentence. Code (1957, 1982 Repl.Vol.), Art. 27, §§ 645JA–645JG; Rule 4–344. This sentence review should not and does not result in an automatic affirmance of the trial judge's sentence; in many cases sentences are changed.

In sum, within a thirty-day period after the sentence in a criminal case, and, if appellate review or sentence review is sought during that period, thereafter during the pendency of such review, the criminal judgment is not so finalized that the possibility of future proceedings on the charges is remote. Therefore, during that period, the danger is real that the testimony of the sentenced individual could incriminate him with respect to the charges.

■ Contrary to the view of the court below, the privilege against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States, supra,* 341 U.S. at 486, 71 S.Ct. at 818. It is to be "broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom." *In re Gault,* 387 U.S. 1, 50, 87 S.Ct. 1428, 1455–1456, 18 L.Ed.2d 527 (1967). *See Smith v. State, supra,* 283 Md. at 194–195, 388 A.2d 539; *State v. Comes,* 237 Md. 271, 282, 206 A.2d 124 (1965); *Allen v. State,* 183 Md. 603, 607, 39 A.2d 820 (1944). In light of these principles, and in accordance with the reasoning in *Smith v. State* and other

cases throughout the country, we hold that, under both the Fifth Amendment and Art. 22 of the Maryland Declaration of Rights, a witness who has been convicted and sentenced for a criminal offense is entitled to invoke the privilege against self-incrimination with regard to that offense during the thirty-day period for seeking appellate review or sentence review by a three-judge circuit court panel. Furthermore, if an appeal or application for leave to appeal or application for sentence review under the statute and Rule 4–344 is filed, the right to claim the privilege continues during the pendency of the direct appellate or sentence review proceedings.

 In the present case, as the time for seeking appellate review or sentence review had not expired when Tyrone Little was called as a witness, Little was entitled to invoke his federal and state constitutional privilege against self-incrimination. Therefore, we need not and do not reach the State's alternate argument that Little was entitled to invoke the privilege because of the possibility of new charges, such as conspiracy, being filed against him.[4]

JUDGMENT AFFIRMED WITH COSTS.

---

**4.** One final matter concerning our decisions in this area warrants clarification. In *Smith v. State, supra,* 283 Md. at 189–190, 388 A.2d 539, we distinguished on several grounds an earlier case, *Knox v. State,* 234 Md. 203, 198 A.2d 285 (1964), on which the petitioner Smith had relied. In addition to pointing out factual differences between *Smith* and *Knox* (283 Md. at 189), we also stated that *Knox* was inapposite because it was concerned with the self-incrimination privilege under the Maryland Declaration of Rights, whereas the witness in the *Smith* case relied solely on the self-incrimination privilege under the Fifth Amendment to the federal constitution. This statement understandably led the Court of Special Appeals in the instant case to conclude that this Court viewed the Maryland Declaration of Rights one way and the Fifth Amendment a different way. 65 Md.App. at 331–334, 500 A.2d 650. The statement in *Smith* was unfortunate; it incorrectly suggested that this Court viewed the two constitutional provisions differently.

This Court has long taken the position that the privilege against self-incrimination contained in Art. 22 of the Maryland Declaration of Rights generally is "in pari materia with its federal counterpart." *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979). *See State*

v. *Panagoulis*, 253 Md. 699, 707 n. 3, 253 A.2d 877 (1969); *Brown v. State*, 233 Md. 288, 296, 196 A.2d 614 (1964), and cases there cited. With regard to the principles and holdings set forth in *Smith v. State, supra,* and this case, we perceive no difference between Art. 22 of the Declaration of Rights and the Fifth Amendment's Self-Incrimination Clause. To the extent that there is any inconsistency between the *Knox* opinion and the opinion in the instant case, *Knox* is disapproved.