842 F.2d 1293
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Walter Reed MARTINDALE, III, Appellant.
 No. 86-7388.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 29, 1987.
Decided March 2, 1988.
 
 Blair Howard (John Frank Leino; Howard & Howard, P.C., on brief), for appellant.
 Justin Williams, Assistant United States Attorney (Elsie L. Munsell, United States Attorney; David B. Smith, Trial Attorney, U.S. Department of Justice, on brief), for appellee.
 Before DONALD RUSSELL, JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Walter Reed Martindale, III, was convicted of conspiracy to violate the Gun Control Act of 1968, transporting firearms outside state of residence, transporting a firearm in foreign commerce, unlawful use of a diplomatic passport, and impersonating a federal officer. His convictions were affirmed by this Court on appeal. United States v. Martindale, 790 F.2d 1129 (4th Cir.), cert. denied, 55 U.S.L.W. 3235 (U.S. Oct. 6, 1986). Thereafter Martindale filed in the district court a motion for a new trial based upon "newly discovered evidence" under Rule 33, Federal Rules of Criminal Procedure. The district court denied the motion and Martindale has appealed.
 
 
 2
 The basis of Martindale's motion for a new trial is the discovery of a United States Department of State cable communication referencing certain earlier cable communications between State Department personnel in England and the State Department. It is Martindale's contention that the existence of these cables constitutes newly discovered evidence which supports his position regarding his custodial interrogation by United States Customs agents and by Scotland Yard investigators. Martindale contended at trial and on direct appeal that he was placed in custody from the time that he was arrested in London, England and remained in custody up through his release by Customs officials following a 100% search and interrogation of him upon his arrival in the United States. As a result of this custodial interrogation he contends that certain statements that he gave should have been suppressed.
 
 
 3
 The significance of the newly discovered Department of State cable communications, in Martindale's view, is that the cables reveal that there was an exchange of information between the Department of State and British authorities while Martindale was in custody in Great Britain. He argues, therefore, that this exchange of information is evidence that the Scotland Yard investigators were working as agents for the United States; and, had he been made aware of the recently discovered United States--Britain communications, he would have used them to attack the credibility of the British investigators at the suppression hearing in the trial court. Hopefully, such an attack may have lead to the exclusion of Martindale's statements at his trial and, as a result, to a different verdict.
 
 
 4
 Martindale also contends that the communications cables establish that he was in custody at the time that he was interrogated by the Customs agent upon arriving in the United States. Because the warnings required by the rule in Miranda v. Arizona, 384 U.S. 436 (1966) were not given at the Customs interrogation Martindale argues that the statement should have been suppressed and that he is entitled to a new trial. We disagree and affirm the order denying the motion for a new trial.
 
 
 5
 In order for newly discovered evidence to warrant a new trial--
 
 
 6
 (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial;
 
 
 7
 (b) facts must be alleged from which the court may infer diligence on the part of the movant;
 
 
 8
 (c) the evidence relied on, must not be merely cumulative or impeaching;
 
 
 9
 (d) it must be material to the issues involved; and
 
 
 10
 (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.
 
 
 11
 Mills v. United States, 281 F.2d 736, 738 (4th Cir.1960).
 
 
 12
 In evaluating the materiality of evidence which the prosecution has failed to disclose, the Supreme Court has stated that: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 13
 The district court found that, as to the Customs intertogation, the newly discovered cable communications did not affect its earlier conclusion that Martindale's statements were understandingly and voluntarily made and that Martindale was not in custody when the statements were made. The court noted that the issue regarding the Customs interrogation, and the various factors surrounding it, had been dealt with at length and resolved against Martindale at the pretrial suppression hearing.
 
 
 14
 Regarding the two interrogations in England conducted by Scotland Yard investigators, the district court found that the State Department involvement was known to Martindale from the outset, and was known to Martindale's attorneys at the time of his trial. The evidence, therefore, did not qualify as newly discovered evidence. Alternatively, even assuming that the cable communications did qualify as newly discovered evidence, the cables did not show an American participation in the two interrogations to such an extent that the interrogations could be said to be carried out by American agents. Miranda warnings were not, therefore, required.
 
 
 15
 In concluding that the American participation was peripheral and insufficient to create an agency relationship between the United States and the British investigators, the district court found:
 
 
 16
 The direction to seize the passports [sic], which unquestionably had expired and the defendant no longer had any right to keep it, and maintain it for evidence, and the direction to inquire of British immigration authorities to see what use had been made of that passport, can in no way be construed as a direction for the British agents to interrogate the defendant as to matters which would inculpate him in an American crime; and the substance of the interviews themselves bear this out.
 
 
 17
 The focus of the interview by Field and Burke in Great Britain [was] on the violations of British law which were called into question when he brought weapons into Great Britain. That he inculpated himself insofar as possible violations of the laws of the United States in the process of answering questions to Scotland Yard and people in Great Britain does not turn it into an American interrogation; and if they in the process of that interrogation for their own account discovered matters that would be inculpatory to hi[m], insofar as the violations of laws of the United States, there is nothing to prevent the British from turning that information over to the Americans.
 
 
 18
 We agree. Our independent review of this claim leads us to conclude that, had the cable communications been available to Martindale for use during his trial, the outcome of the trial would not have been different. We have carefully examined the record in this case, including the material submitted as "newly discovered evidence." We conclude that the district court properly exercised its discretion in conformity with the criteria set forth in Mills, supra; and United States v. Williams, 415 F.2d 232, 233 (4th Cir.1969). Accordingly, we dispense with oral argument, since the dispositive issues have recently been authoritatively decided, deny Martindale's motion for release on bail, and affirm the judgment of the district court.
 
 
 19
 AFFIRMED.