STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Rollin Lloyd McCoNNOHIE, Defendant-Appellant.

Supreme Court

*No. 81–1834–CR. Argued September 6, 1984.—
Decided November 27, 1984.*

(Also reported in 358 N.W.2d 256.)

58

For the plaintiff-respondent-petitioner the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee, and oral argument by *Mr. Walrath.*

DAY, J.   This is a review of an unpublished decision of the court of appeals reversing a judgment of the circuit court for Milwaukee county, Hon. Marvin C. Holz, convicting Rollin Lloyd McConnohie of being a party to the crime of armed robbery under secs. 943.32(1) (b), (2), Stats. 1979–80,[1] and 939.05, 1979–80,[2] and re-

[1] "943.32   **Robbery.**   (1) Whoever, with intent to steal, take property from the person or presence of the owner by either of the following means is guilty of a Class C felony: . . .

"(b)   By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

"(2)   Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony."

[2] "939.05   **Parties to crime.**   (1) Whoever is concerned in the commission of a crime is a principal and may be charged with

versing an order of the circuit court for Milwaukee county, Hon. John F. Foley, denying motions for post-conviction relief. Three issues are raised in this review: (1) Was the defendant denied his sixth amendment right to compulsory process when the trial court upheld the fifth amendment privilege claim of a witness who had been convicted but not sentenced for being a party to the crime for which the defendant was being tried? (2) Was there a sufficient inquiry into the basis of the witness' claim of fifth amendment privilege for the trial court to sustain that claim? (3) Was the defendant's constitutional right to due process violated by the exclusion of a recitation by the defendant of the out-of-court statements of a participant in the crime for which the defendant was charged that a third party, not the defendant, was that participant's accomplice in that crime? We conclude that the trial court properly upheld the witness' claim of fifth amendment privilege and the de-

---

and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

fendant was not denied his right to compulsory process. We also conclude that the defendant was not denied his constitutional right to due process by the exclusion of the out-of-court statements. We, therefore, reverse the decision of the court of appeals and reinstate the judgment of conviction.

The defendant and Charles LaFrance were charged with armed robbery of a gas station. Both the state and the defense agree that LaFrance was one of the robbers. The gas station attendant identified the defendant as one of the perpetrators of the crime.

The defendant attempted to show that he was not at the scene of the crime, but elsewhere, at the time of the offense. He further attempted to show that one Jay Serio was LaFrance's accomplice in the robbery.

The defendant testified that LaFrance and Serio met the defendant and Jay Goldman, a friend of the defendant, shortly after the robbery. The defendant then attempted to testify as to a statement made by LaFrance at that meeting in which LaFrance said that he and Serio robbed the gas station. The trial court ruled that the defendant could testify that LaFrance admitted his own participation in the crime but he could not testify that LaFrance had implicated Serio. Serio was not being called as a witness and his unavailability had not been established. When the defendant later testified that LaFrance had said "Serio was with him," the trial court struck the testimony and instructed the jury to disregard the answer.

When Jay Goldman later testified, he was permitted to say that at the meeting with LaFrance and Serio, "they" stated that they had just "pulled a job" and that the station attendant appeared frightened when they did it.

The defendant then called LaFrance to testify that Serio was LaFrance's accomplice. On the previous day and prior to the start of the trial, LaFrance entered a

plea of no contest to the charge of being a party to the crime of armed robbery and the same trial judge entered a judgment of conviction on that plea. At the time he was called as a witness, LaFrance had not been sentenced. When the defense counsel attempted to ask LaFrance questions concerning the robbery and the defendant, LaFrance refused to answer invoking his privilege against self-incrimination. Counsel and the court then retired to chambers where the defense counsel posed the questions he sought to ask LaFrance. The trial court discussed and then rejected these questions in view of LaFrance's claimed privilege. LaFrance was then excused as a witness.

Prior to the time LaFrance, the defendant, or Goldman were called to testify, the trial court and defense counsel had a discussion concerning LaFrance's possible fifth amendment claim. The trial court said that should LaFrance later be called as a witness he retained his fifth amendment privilege since he still might appeal.

On February 6, 1981, the jury found the defendant guilty and the circuit court entered a judgment of conviction on that guilty verdict. On September 22, 1981, the order denying the defendant's postconviction motions was filed. On October 14, 1982, the court of appeals reversed in the interest of justice under sec. 752.-35, Stats. On July 1, 1983, this court reversed the court of appeals' decision and remanded the case for it to decide the remaining issues. *State v. McConnohie*, 113 Wis. 2d 362, 334 N.W.2d 903 (1983). On November 11, 1983, the court of appeals again reversing the circuit court's judgment held that the defendant was denied his right to compulsory process when the trial court accepted LaFrance's claim of fifth amendment privilege and that the exclusion of LaFrance's out-of-court statement as it related to Serio was a denial of due process and a violation of Wisconsin's hearsay rule exception,

sec. 908.045, 1979–80. On February 14, 1984, this court granted a petition to review.

I. *WAS THE DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS WHEN THE TRIAL COURT UPHELD THE FIFTH AMENDMENT PRIVILEGE CLAIM OF A WITNESS WHO HAD BEEN CONVICTED BUT NOT SENTENCED FOR BEING A PARTY TO THE CRIME FOR WHICH THE DEFENDANT WAS BEING TRIED?*

We hold that at the time LaFrance was called as a witness, his fifth amendment privilege was still available with respect to the armed robbery charge for which he pled no contest and had been convicted, because the privilege continues at least until sentencing.

In *Hanneman v. State,* 50 Wis. 2d 689, 691, 184 N.W. 2d 896 (1971), the trial court stated that it did not follow the practice of extending probation to defendants who did not take the witness stand when the only question before the court was sentencing. On appeal the defendant contended that his privilege against self-incrimination was violated when the trial court refused probation on the ground that he did not testify. *Hanneman,* 50 Wis. 2d at 691. This court said: "[I]n this case there was no violation of the defendant's constitutional rights. The defendant admitted his guilt by entering a plea of guilty to the crimes charged. A plea of guilty is an admission of guilt and a waiver of the privilege against self-incrimination." *Hanneman,* 50 Wis. 2d at 692. This court went on to say, however, that "[i]t would be an abuse of discretion for the trial court to deny probation only because the defendant refused to testify at a hearing on sentencing." *Hanneman,* 50 Wis. 2d at 692. This court also said that "[a]n examination of the entire record in this case reflects that

the trial court did not consider the defendant a proper person for probation. . . ." *Hanneman,* 50 Wis. 2d at 693.

In the later case of *State v. Harris,* 92 Wis. 2d 836, 841, 285 N.W.2d 917 (Ct. App. 1979), the witness whose privilege was being challenged had pled guilty and had been sentenced. The court of appeals agreed with the trial court's statement that the witness retained his privilege because he claimed an intent to appeal and said this was an exception to the rule that a plea of guilty waived the privilege against self-incrimination, citing *Hanneman. Harris,* 92 Wis. 2d at 848.

The defendant has cited a number of federal cases for the proposition that the privilege against self-incrimination is lost upon a guilty plea or a conviction. The United States Supreme Court in *Reina v. United States,* 364 U.S. 507, 513 (1960), said that "[t]here is indeed weighty authority for that proposition" that the privilege is lost on conviction. None of the federal cases cited, however, turned on the issue of whether or not the person claiming the privilege had been sentenced.

An issue in the case of *Mills v. United States,* 281 F.2d 736 (4th Cir. 1960), is closely related to the instant case. In *Mills,* the defendant called his wife, a co-defendant who had previously been convicted, to testify on his behalf at a hearing on a motion for a new trial. *Mills,* 281 F.2d at 739. She refused to testify and the trial court interpreted this as an invocation of her fifth amendment privilege. *Mills,* 281 F.2d at 740. The Fourth Circuit Court stated in part:

"We conclude that the District Court may have reasonably and correctly interpreted, construed and accepted Marjorie's [the wife's] refusal as a claim of the privilege against self-incrimination, and the circumstances then confronting the witness and the court lend support to that conclusion. The fact that Marjorie had not been

sentenced distinguishes this case from *United States v. Gernie*, 2 Cir., 1958, 252 F.2d 664, 670, where the witness had been convicted of the crime with which charged and sentenced. It was held he no longer was able to claim the privilege of the Fifth Amendment and could be compelled to testify. The theory in that case was that, having been convicted and sentenced, the witness could not be further incriminated by his answers. However, at the time of these proceedings in the case at bar, the period within which Marjorie Mills could prosecute an appeal of her own conviction had not expired." *Mills*, 281 F.2d at 741.[3]

A number of state courts have held that where one is convicted, whether on a guilty plea or otherwise, his privilege against self-incrimination continues at least until sentencing. In *Commonwealth v. Garland*, 475 Pa. 389, 395, 380 A.2d 777 (1977), the Supreme Court of Pennsylvania said concerning the appellant's contention that the trial court erred in not compelling his co-defendant to testify: "Appellant argues that Pearsall [the co-defendant] waived his privilege against self-incrimination by pleading guilty. We believe, however, that this waiver does not go into effect until, at the very least, sentence is imposed."

The reasoning which the various state courts have used in adopting this rule is persuasive. In *Smith v. State*, 283 Md. 187, 188, 388 A.2d 539, *cert. denied*, 439

---

[3] The court in *Mills* discussed extending the privilege until the time to appeal has expired. Although it is not necessary that we go that far to decide this case, we do note that there is authority for this position. *Cf. Mills v. United States*, 281 F.2d 736, 741 (4th Cir. 1960). *Stehling v. State*, 391 So. 2d 287, 288 (Fla. Ct. App. 1981). There is also authority for the proposition that the privilege against self-incrimination continues while an appeal is pending. *Cf., State v. Harris*, 92 Wis. 2d 836, 845, 285 N.W.2d 917 (Ct. App. 1979); *Knight v. Maybee*, 253 N.Y.S. 2d 59, 44 Misc. 2d 152 (1964); *People v. Lindsay*, 69 Mich. App. 720, 245 N.W.2d 343 (1976); *People v. Lopez*, 110 Cal. App. 3d 1010, 168 Cal. Rptr. 378 (1980).

U.S. 1130 (Ct. App. 1978), a non-party witness who, pursuant to a plea bargain pled guilty but had not been sentenced, was called by the defense to testify. The trial court upheld the witness' assertion of his fifth amendment privilege against self-incrimination. *Smith,* 283 Md. at 189. The defendant appealed claiming that the witness waived his privilege by pleading guilty and, therefore, the trial court erred in not compelling the witness to testify. *Smith,* 183 Md. at 189. The Maryland Court of Special Appeals upheld the trial court's determination giving as one of its reasons the detrimental effect the denial of the privilege could have on the witness' sentencing. *Smith,* 283 Md. at 191.

This reasoning is especially pertinent to the instant case. Here, LaFrance was being asked to testify before Judge Holz, the same judge who had accepted LaFrance's plea and who was to sentence LaFrance at a later date. There was a potential danger to LaFrance of an increased sentence resulting from his own testimony.

In *Smith,* the Maryland court gave another reason in support of its holding that the witness' privilege continued at least until sentencing. In *Smith,* the state, pursuant to its plea bargain with the witness agreed to make no recommendation as to sentencing. *Smith,* 283 Md. at 188. The Maryland court stated:

"A breach by the State of its agreement to make no recommendation as to sentencing, followed by Montgomery's [the witness'] election to rescind the plea bargain, could have led directly to Montgomery's being prosecuted on both counts of the original indictment. This possibility, as *Miller* illustrates, is not completely speculative.

"It is evident, therefore, that Montgomery, when called to testify, had reasonable cause to fear the possibility of a subsequent prosecution concerning events about which he would be required to testify in Smith's trial. Inasmuch as many cases hold that the prior testimony of a defendant will be admitted against him, even

though given as a witness in a prior criminal proceeding against another, Montgomery could reasonably conclude that there was a danger that his testimony might be used against him." *Smith*, 283 Md. at 192–193.

In the instant case, LaFrance's plea agreement included an agreement by the district attorney to make a certain sentencing recommendation. If the district attorney did not make that recommendation, LaFrance would have been entitled to withdraw his plea and to have a trial on the charge. *State v. Reppin*, 35 Wis. 2d 377, 385–386, 151 N.W.2d 9 (1967). As with the defendant in *Smith*, there was a possibility that if the plea agreement was not kept and LaFrance withdrew his no contest plea he could be tried after being called as a witness in McConnohie's trial.

In *State v. Tyson*, 43 N.J. 411, 414, 204 A.2d 864 (1964), *cert. denied* 380 U.S. 987 (1965), the defendant contended that his co-defendant could not invoke the privilege against self-incrimination when called as a witness in the defendant's trial. At the time he was called as a witness, the co-defendant had already pled guilty but he had not been sentenced. *Tyson*, 411 N.J. at 414. The New Jersey Supreme Court held:

"A plea of guilty is a waiver of the right to require the State to prove the accused guilty beyond a reasonable doubt. In recognition of the fundamental nature of the right, New Jersey has promulgated R. R. 3:7–1(a), which permits a defendant to move to withdraw his guilty plea. The rule contemplates that a decision to plead guilty is not, in every case, irrevocable. While a motion to withdraw a plea before sentence is not a matter of right but of judicial discretion, our courts have liberally exercised their discretion to enable a defendant who asserts his innocence to withdraw his plea. *State v. Deutsch*, 34 N.J. 190, 198 (1961). That case also establishes that one of the factors to be considered upon a motion to withdraw a plea is the apparent guilt or innocence of the accused. *Id.* at p. 204. Had Hawrylak [the witness] been forced to answer the questions

put to him by defense counsel, his answers, if incriminating, would have been persuasive grounds for a court in the exercise of its discretion to deny a motion to withdraw his plea. Thus his incriminating testimony would have jeopardized his opportunity to require the State to prove his guilt beyond a reasonable doubt. Hence, Hawrylak would be forced to supply evidence from his own lips which would tend, as a practical matter, to make his guilty plea irrevocable. We think this amounts to self-incrimination. We therefore hold that where a witness has pleaded guilty to a criminal charge but has not yet been sentenced, he retains his constitutional privilege to refuse to answer questions on the ground that his answers could incriminate him of that charge." *Tyson*, 43 N.J. at 416.

In Wisconsin, a defendant may withdraw his guilty plea prior to sentencing for any "fair and just reason." *Libke v. State*, 60 Wis. 2d 121, 128, 208 N.W.2d 331 (1973). Incriminating statements by the defendant may affect the discretionary determination of the trial court as to the existence of a fair and just reason to withdraw the plea. As in *Tyson*, testimony could, as a practical matter, make a defendant's guilty plea or no contest plea irrevocable. We agree with the New Jersey Supreme Court that this amounts to self-incrimination.[4]

II. *WAS THERE A SUFFICIENT INQUIRY INTO THE BASIS OF THE WITNESS' CLAIM OF FIFTH AMENDMENT PRIVILEGE FOR THE TRIAL COURT TO SUSTAIN THAT CLAIM?*

The defendant claims the trial court did not conduct a sufficient inquiry into whether the witness had

---

[4] Although the cases discussed above involved guilty pleas, no distinction between guilty pleas and no contest pleas need be made with respect to the issue of whether one retains the privilege against self-incrimination until sentencing. In the case of a no contest plea, the policies which favor extending the privilege until sentencing are even stronger than in the case of a guilty plea where an express admission of guilt is involved.

an adequate basis to claim the fifth amendment privilege. The court of appeals agreed with the defendant. We hold that a sufficient inquiry was made for the trial court to sustain LaFrance's assertion of his privilege against self-incrimination.

The United States Supreme Court has set the standard which trial courts should apply in determining whether to sustain a witness' refusal to answer on fifth amendment grounds. In *Malloy v. Hogan*, 378 U.S. 1, 11, 12 (1964), the Court said:

"We recently elaborated the content of the federal standard in *Hoffman:*
"The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute. . . . [I]f the witness, upon interposing his claim, were required to prove the hazard . . . he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." 341 U.S. at 486–487.
"We also said that, in applying that test, the judge must be " '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." 341 U.S. at 488.

Where it is apparent to the trial court from the circumstances that the testimony of the witness "might be dangerous because injurious disclosure could result," the need for specific inquiry into the basis for the claimed privilege is diminished. In *Commonwealth v. Allen*, 501 Pa. 525, 462 A.2d 624, 627 (1983), the trial court excused a witness who refused to testify on fifth amendment grounds. No inquiry into the witness' basis for the assertion of the privilege was made. *Allen*, 462 A.2d at

627. The Supreme Court of Pennsylvania upheld the trial court's decision to excuse the witness saying:

"The Superior Court panel was of the opinion that the trial court did not err in allowing Page [the witness] to assert his Fifth Amendment privilege without first making a specific inquiry into the factual basis for the claimed privilege. The court found, as did the trial court, that the testimony of record was sufficient to suggest Page's complicity in the crime. A specific factual inquiry was therefore deemed unnecessary. We agree." *Allen*, 462 A.2d at 627.

At the time LaFrance was called as a witness, the trial court knew that he had pled no contest for his part in the very crime for which the defendant was now on trial. The trial court had heard the testimony of the defendant and Jay Goldman which implicated LaFrance in that crime. The trial court properly concluded that LaFrance still possessed his privilege against self-incrimination with respect to this crime to which he pled no contest.

In this case, LaFrance first stated that he refused to testify on fifth amendment grounds. The trial court then allowed the defense counsel to ask LaFrance several questions. Out of the presence of the jury, the trial court heard the remainder of the questions which the defense counsel wished to ask LaFrance. The defense counsel sought to ask such questions as whether La France was a friend of the defendant, whether the defendant was involved in a robbery on September 28, 1980, whether LaFrance had met the defendant on the night of September 28 as the defendant previously testified, and whether LaFrance had a gun. The trial court then excused LaFrance ruling that he could properly refuse to testify based on his fifth amendment privilege.

The record shows there was a strong possibility that answers to the questions posed by the defense counsel

would either directly or indirectly implicate LaFrance in criminal conduct. Therefore, it was not "perfectly clear" in light of all the circumstances that LaFrance was mistaken in his assertion of the privilege and that the answers could not "possibly" have a tendency to incriminate. The trial court did not err in sustaining LaFrance's fifth amendment privilege claim.

Since the trial court properly sustained LaFrance's privilege against self-incrimination, the defendant's sixth amendment right to compulsory process was justifiably compromised. *United States v. Rodriguez*, 706 F.2d 31, 36 (2nd Cir. 1983).

III. *WAS THE DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS VIOLATED BY THE EXCLUSION OF A RECITATION BY THE DEFENDANT OF THE OUT-OF-COURT STATEMENTS OF A PARTICIPANT IN THE CRIME FOR WHICH THE DEFENDANT WAS CHARGED THAT A THIRD PARTY, NOT THE DEFENDANT, WAS THAT PARTICIPANT'S ACCOMPLICE IN THAT CRIME?*

The defendant contends that he was denied due process when the trial court would not allow him to testify that LaFrance had made a statement to him that Serio was LaFrance's accomplice. The court of appeals agreed.

We hold that the defendant's constitutional right to due process was not violated by the exclusion of La France's hearsay statement as it related to Serio.

In *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038 (1973), the United States Supreme Court held that the hearsay rule could not be "applied mechanically to defeat the ends of justice" and thereby deny the defendant a trial in accordance with due process. In *Chambers*, the trial court excluded the testimony of

three witnesses who were told individually by another man that he, and not the defendant, had committed the crime in question. *Chambers,* 410 U.S. at 298. The Mississippi Supreme Court approved the exclusion of this testimony ruling it was hearsay. *Chambers,* 410 U.S. at 298. In reversing the state court, the Supreme Court held "that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Chambers,* 410 U.S. at 303.

In *Chambers,* the Court noted that the excluded testimony was critical to the defendant's defense and that this testimony was shown to be reliable. *Chambers,* 410 U.S. at 302. The Court identified several factors it considered to determine that the hearsay confessions were made "under circumstances that provided considerable assurance of their reliability." *Chambers,* 410 U.S. at 300. First, each of the hearsay confessions was made spontaneously to a close acquaintance shortly after the crime occurred. *Chambers,* 410 U.S. at 300. Second, each of the confessions was corroborated by some other evidence in the case. The Court considered such evidence as the declarant's sworn confession, the testimony of an eyewitness to the crime (a shooting), the testimony that the declarant was seen with a gun immediately after the shooting, the proof of the declarant's prior ownership of a revolver, and the sheer number of independent confessions. *Chambers,* 410 U.S. at 300. Third, each confession was self-incriminatory and against interest. *Chambers,* 410 U.S. at 300, 301. Finally, if there was any doubt about the truthfulness of the hearsay statements, the declarant was present, under oath and available for cross-examination. *Chambers,* 410 U.S. at 301.

The holding in *Chambers* is narrow and the question of whether a rule of evidence has been mechanistically ap-

plied to deny due process must be decided on a case-by-case basis. *State v. Sharlow,* 110 Wis. 2d 226, 234, 327 N.W.2d 692 (1983).

"The decision whether the circumstances provide 'considerable assurance,' *Chambers v. Mississippi,* [410 U.S.] at 300, of the trustworthiness of a third-party confession lies within the sound discretion of the trial court which is best situated to weigh the reliability of the circumstances surrounding the declaration. Consequently, this court will not reverse the trial court's decision unless it is clearly erroneous." *State v. Brown,* 96 Wis. 2d 238, 245–246, 291 N.W.2d 528 (1980), *cert. denied,* 449 U.S. 1015 (1980).

We conclude that the trial court's decision was not clearly erroneous because the instant case is sufficiently distinguishable from *Chambers.*

In this case, factors exist which lend credibility to La France's out-of-court statement. The statement was made to acquaintances shortly after the robbery occurred. Some corroboration for the truth of the statement was also given by LaFrance's later plea of no contest.

Although some circumstances may lend some credibility to the statement, the totality of the circumstances do not provide nearly the assurance of trustworthiness present in *Chambers.* First in *Chambers,* the amount and quality of the corroboration evidence far exceeded that present here. In *Chambers,* an eyewitness to the crime who was a lifelong friend of the declarant identified the declarant as the perpetrator. *Chambers,* 410 U.S. at 289. A second witness in *Chambers* testified that he saw the declarant immediately after the shooting with a gun in his hand. *Chambers,* 410 U.S. at 289. In this case, on the other hand, the eyewitness to the crime identified the defendant. In *Chambers,* the declarant confessed to committing the crime four different times, once in writing

and three other independent times to three different people. Here, LaFrance is alleged to have confessed only one time and that the defendant and the defendant's friend, Jay Goldman were present. Although LaFrance's no contest plea is an implied admission of guilt as to his involvement, it provides little, if any, corroboration for the involvement of Serio which was the excluded portion of the alleged confession.

Second, in *Chambers,* the relevant portion of the out-of-court confession implicated the declarant and exculpated the defendant. Here, the portion of LaFrance's statement which exculpates the defendant relates not to LaFrance's involvement but to Serio's. Therefore, the statements reliability is more tenuous.

Finally, in *Chambers,* if there was any question about the truthfulness of the extra-judicial statements, the declarant was present in the courtroom and under oath. "He could have been cross-examined by the State, and his demeanor and responses weighed by the jury." *Chambers,* 410 U.S. at 301. In *Chambers,* the declarant had been put on the stand and he denied any involvement in the crime. *Chambers,* 410 U.S. at 291. In this case, LaFrance had previously pled no contest to his involvement in the crime. Prior to the defendant testifying, the trial judge had stated in conference that LaFrance retained his fifth amendment privilege. When LaFrance was later called as a witness he did invoke that privilege and it was sustained. Unlike the declarant in *Chambers,* LaFrance proved to be unavailable for cross-examination and for having his demeanor and responses weighed by the jury. Since neither party disputed LaFrance's involvement, the fact that LaFrance invoked his fifth amendment privilege does not provide any assurance of the trustworthiness of the out-of-court confession as it relates to Serio. Therefore, this "significant consideration of availability for cross-examination," *Brown,* 96 Wis. 2d at 245, from *Chambers,* was not present.

It does not take much imagination for a defendant who has an unavailable accomplice, to claim at trial that the accomplice has admitted to him that the only other participant in the crime for which the defendant is charged is a third party. Adding the defendant's alibi witness as one who claims to have heard the "confession" adds little to increase the reliability of the purported statement. On the other hand, the victim of the crime, the station attendant, clearly identified the defendant as a participant in the robbery. At a police line-up five days after the robbery, the victim identified the defendant and La France as the men who robbed him at the filling station. It is interesting to note that the sixth man in the line-up was Jay Serio, but the victim did not identify him at all as being a possible suspect. On this record it is clear that the trial court did not clearly err in excluding La France's purported statement that Jay Serio was his accomplice.

The defendant also contends that the exclusion of the hearsay statement of LaFrance also violated sec. 908.045 (4), Stats. 1979–80, which provides:

"**908.045   Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . .

"4) STATEMENT AGAINST INTEREST. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated."

We conclude that at the time the defendant attempted to testify as to this statement this statute section was inapplicable because there had been no showing by the defend-

ant of LaFrance's unavailability at the time the defendant testified. Although LaFrance possessed a fifth amendment privilege, it was not known that he would invoke that privilege until he was actually called.

The trial court properly excluded the statement by the defendant.

*By the Court.*—The decision of the court of appeals is reversed and the judgment of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I join the court's opinion. I write separately, as I have previously, to comment on a recurring problem in appellate practice, namely, when review is granted by this court, how appellate counsel and this court should handle issues presented to the court of appeals and not decided by that court. See *State v. Serebin,* 119 Wis. 2d 837, 863, 869, 350 N.W.2d 65 (1984) (Abrahamson, J. concurring; Steinmetz, J. concurring in part and dissenting in part).

In this case, the court of appeals on October 19, 1982, decided only one issue among several. On review, this court on July 1, 1983, reversed the decision of the court of appeals on that one issue and remanded the cause for determination of the remaining issues. *State v. McConnohie,* 113 Wis. 2d 362, 375, 334 N.W.2d 903 (1983).

On remand to the court of appeals, there were no further briefs by the parties and no oral argument. This procedure was to be expected. The parties had already submitted briefs to the court of appeals on all the issues they wished to raise. Although the parties could have sought permission to file additional briefs on remand, they did not. The court of appeals has, in several cases, refused to grant permission to file additional briefs.

No oral argument at the court of appeals would be expected on remand.

After the court of appeals issued its second decision on November 11, 1983, the state then sought review in this court of that second decision. We granted review. The parties filed additional briefs in this court and argued the case before this court.

As a result of remanding the remaining legal issues to the court of appeals, instead of deciding the issues ourselves, we delayed the final resolution of the case to November, 1984, and created additional work for the litigants, the court of appeals and this court.

If on review the issues have been briefed either in this court or in the court of appeals and the parties are willing to rely on their briefs, I would prefer, in the interest of judicial economy, speedy resolution of appeals, reduced costs to the litigants, and finality of decisions, that this court decide the issues left unresolved by the court of appeals.