STATE of Wisconsin, Plaintiff-Appellant,

v.

James G. LANGENBACH, Defendant-Respondent.

Court of Appeals

*No. 01–0851–CR. Submitted on briefs August 3, 2001.—Decided August 29, 2001.*

## 2001 WI App 222

(Also reported in 634 N.W.2d 916.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert J. Jambois*, District Attorney, Kenosha County.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Patrick M. Donnelly,* assistant state public defender, of Madison.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. The State filed an interlocutory appeal of a trial court order refusing to allow it to call the defendant, James G. Langenbach, as an adverse witness at the mental responsibility stage of his bifurcated criminal trial. The State maintains that Langenbach's Fifth Amendment privilege against self-incrimination does not apply at this stage of the proceeding. We disagree and affirm the order of the trial court.

## FACTS

¶ 2. The facts in this case are not in dispute. On May 26, 1999, an information was filed charging Langenbach with two counts of attempted first-degree intentional homicide while armed with a dangerous weapon, two counts of intentionally causing great bodily harm to a child while armed with a dangerous weapon as a repeat offender with a race-based penalty enhancer, and two counts of leaving the scene of an accident involving great bodily harm as a repeat offender. Langenbach initially pled not guilty and not guilty by reason of mental disease or defect to the charges.

¶ 3. On February 19, 2001, Langenbach entered pleas of no contest to all six charges listed in the information, all as a repeat offender; however, he retained his plea of not guilty by reason of mental disease or defect.

¶ 4. On February 20, 2001, a jury trial was scheduled for the second, mental responsibility, phase of the

937

bifurcated trial. Prior to jury selection, the State filed a motion asking to call Langenbach adversely as a witness, arguing that Langenbach had no Fifth Amendment privilege at this stage in the proceeding. The trial court denied the State's motion, concluding that Langenbach's Fifth Amendment privilege did apply at this stage, and that he could not be called as an adverse witness. After the defense's opening statement, the trial court granted the State's request for a mistrial for reasons unrelated to this appeal.

¶ 5. The State again moved the trial court for an order allowing it to call Langenbach as an adverse witness at the mental responsibility phase of the trial, making the same argument, that Langenbach's Fifth Amendment privilege did not apply. Again, the trial court denied the State's motion. On April 17, 2001, we granted the State's petition for leave to appeal the trial court's nonfinal order.

## DISCUSSION

██

¶ 6. This appeal involves the application of undisputed facts to federal and state constitutional principles which we review independently of the trial court. *State v. Hornung*, 229 Wis. 2d 469, 475, 600 N.W.2d 264 (Ct. App. 1999).

¶ 7. The State argues that the trial court erred when it held that Langenbach could not be called as an adverse witness at the mental responsibility phase of his criminal trial after he had already pled no contest and been found guilty of the charges. Case law belies this argument.

██

¶ 8. The Fifth Amendment to the United States Constitution, made applicable to the states through the

Fourteenth Amendment, demands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Wisconsin Constitution holds approximately the same. Wis. Const. art. I, § 8.

¶ 9. Contrary to the State's assertions, a defendant does not lose his or her Fifth Amendment rights after pleading guilty to criminal charges. The Wisconsin Supreme Court has recognized that the Fifth Amendment privilege extends beyond a guilty plea and conviction. *State v. Marks*, 194 Wis. 2d 79, 91, 533 N.W.2d 730 (1995). When a person is convicted, by guilty plea or otherwise, his or her privilege against self-incrimination continues at least until sentencing. *State v. McConnohie*, 121 Wis. 2d 57, 65, 358 N.W.2d 256 (1984). A witness who has not yet been sentenced might reasonably fear that his or her testimony could cause a sentencing court to impose a harsher sentence than it would have otherwise imposed without the additional testimony. *Marks*, 194 Wis. 2d at 93. Any effort by the State to compel a defendant to testify against his or her will at his or her sentencing hearing clearly contravenes the Fifth Amendment. *Estelle v. Smith*, 451 U.S. 454, 463 (1981). Because there is a possibility that Langenbach could be sentenced in this matter if the jury finds him to be mentally responsible for his actions, his Fifth Amendment privileges survive his no contest pleas.

¶ 10. Potential plea withdrawal is another reason for holding that the Fifth Amendment privilege continues at least through sentencing. *Marks*, 194 Wis. 2d at 92. In Wisconsin, a defendant can withdraw his or her guilty plea before sentencing for any "fair and just reason." *McConnohie*, 121 Wis. 2d at 68 (citation omit-

ted). Incriminating statements may affect the trial court's discretionary determination as to the existence of a fair and just reason to withdraw that plea. *Id.* "[T]estimony could, as a practical matter, make a defendant's guilty or no contest plea irrevocable," which amounts to self-incrimination. *Id.*

¶ 11. Furthermore, a witness may reasonably and appreciably fear incrimination while an appeal is pending or during that time when he or she may appeal his or her conviction and has good faith intentions of doing so. *Marks*, 194 Wis. 2d at 92. This fear of providing incriminating testimony is a legitimate fear which warrants the application of the Fifth Amendment. *Id.* at 94. Thus, it is irrelevant that Langenbach has already pled guilty; his Fifth Amendment privilege does not terminate after his guilty plea but continues with him through disposition and a potential appeal.

¶ 12. The State tries to compare the mental responsibility stage of a criminal trial to a civil commitment proceeding, such as the one in *Allen v. Illinois*, 478 U.S. 364 (1986), and argues that the Fifth Amendment only protects a defendant in a noncriminal proceeding from being compelled to answer questions that might inculpate him or her in a future or pending criminal case.[1] First, *Allen* is inapplicable to the case at hand; as the State admits, the proceeding in *Allen* involved a civil commitment proceeding, not a bifur-

---

[1] We want to emphasize that this is not a case where a defendant pleads not guilty by reason of mental disease or defect, thereby placing his or her mental state at issue, and then refuses to speak with doctors, asserting his or her Fifth Amendment privilege against self-incrimination. There has been no argument in this appeal that Langenbach has failed to submit to any required mental examination. Here, the only issue is

cated criminal trial. We do not agree that the procedure followed in civil commitments should bear on the procedure to be followed in criminal cases. *State v. Murdock*, 2000 WI App 170, ¶ 28, 238 Wis. 2d 301, 617 N.W.2d 175.

¶ 13. Contrary to the State's arguments, the United States Supreme Court has held that the availability of the Fifth Amendment privilege does not turn upon the type of proceeding in which the protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. *Estelle*, 451 U.S. at 462. To sustain the Fifth Amendment privilege, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *McConnohie*, 121 Wis. 2d at 69 (citation omitted). "The privilege is not only intended to protect a defendant when his answers would lead to a conviction . . . but is intended to protect a defendant when the defendant 'apprehends a *danger* from a direct answer.' " *Marks*, 194 Wis. 2d at 94 (citation omitted). The United States Supreme Court has recognized that a legitimate danger is that of incarceration or the impending threat of the deprivation of one's liberty. *Id.* at 94–95. Here, there is a legitimate impending threat of the deprivation of Langenbach's liberty, either through commitment to a mental hospital or imprisonment.

---

whether the State can call Langenbach to provide testimony as an adverse witness during the mental responsibility phase of his own criminal trial.

¶ 14. Furthermore, we disagree that the mental responsibility phase is so detached from the criminal proceeding so as to prohibit invocation of the Fifth Amendment. Wisconsin's system of using a bifurcated trial in cases in which the defendant enters a plea of not guilty by reason of mental disease or defect was created in *State ex rel. LaFollette v. Raskin*, 34 Wis. 2d 607, 627, 150 N.W.2d 318 (1967). The *Raskin* court addressed a statute that, at the time, established that pleas of not guilty and pleas of not guilty by reason of insanity were to be tried concurrently and not in a split trial. *Id.* at 614–18. In order for this statute to conform with due process, the *Raskin* court held that a defendant was entitled to a sequential order of proof on the issue of guilt and insanity so that inculpatory statements made in a compulsory mental examination would not be divulged to the jury before guilt was determined. *Id.* at 623–27. The legislature codified the *Raskin* bifurcated trial procedure in 1969. Laws of 1969, ch. 255, § 63. In 1987, the legislature replaced the statute codifying *Raskin* with WIS. STAT. § 971.165, expanding the rules to be followed in cases where the defendant pleads not guilty by reason of mental disease or defect, but maintaining the basic bifurcated trial process with its sequential order of proof as first established in *Raskin* 1987 Wis. Act 86, § 1.

¶ 15. Then in 1988, the Wisconsin Supreme Court issued *State v. Koput*, 142 Wis. 2d 370, 418 N.W.2d 804 (1988), which held that a unanimous jury verdict was not required on the issue of a defendant's mental responsibility. *Id.* at 374. However, *Koput* did not clearly establish that the responsibility phase is sufficiently removed from the overall criminal proceedings such that all criminal procedure is proscribed. *Murdock*, 2000 WI App 170 at ¶ 20.

¶ 16. *Koput* explained that Wisconsin's system of having a single, bifurcated trial developed only because the *Raskin* court was constrained by the then-existing statute demanding one trial for both pleas of not guilty and not guilty by reason of insanity:

> It was only the constraint of the then existing statute that led to the present sequential procedure. *Raskin* clearly states that the issues are independent and should be separately tried. There is no intimation that both issues are to be resolved by criminal trials. Indeed, *Raskin* makes it clear they are not, that each determination is separate and independent. Our present sequential trial is merely a method of insuring due process, while allowing this court in 1967 to adhere to the extent possible to the existing statutory requirement of a unitary trial. But this deference to the legislature, then, should not be construed to mean that both phases are but divisions of a single criminal trial. They are not. *Raskin* makes that clear.

*Koput*, 142 Wis. 2d at 394. *Koput* merely clarified that the phases of a bifurcated trial serve different purposes; the first phase settles the issue of criminal guilt, while the responsibility phase is dispositional in nature. *Id.* at 388–89. The *Koput* court also stated:

> Clearly, at one time when the burden of proving sanity was on the state and a unanimous finding of sanity was required, the "proceeding" was criminal. Hence, to some degree, in its ancestry at least, it is not completely divorced jurisgenetically from its antecedents. We, therefore, will not denominate it a civil proceeding. *Rather, it is a special proceeding in the dispositional phase of a criminal proceeding*—a proceeding that is not criminal in its attributes or purposes. (Emphasis added.)

*Id.* at 397.

¶ 17. In *Murdock*, the defendant made arguments similar to the ones proferred here by the State. Murdock argued that *Koput* and *Raskin* both held that the responsibility phase was not a part of the criminal trial; because the responsibility phase was not criminal in nature, according to Murdock, provisions of criminal procedure did not apply. *Murdock*, 2000 WI App 170 at ¶ 17. We rejected Murdock's arguments, as we do the State's here.

¶ 18. After examining the background of the bifurcated trial in Wisconsin in *Murdock*, we determined that the "special proceeding" of the responsibility phase is not so divorced from the criminal case that all rules of criminal procedure are inapplicable. *Id.* at ¶ 20. While *Koput* suggests that the mental responsibility phase could have evolved as an entirely separate proceeding from the guilt phase, the fact remains that it has not. *Murdock*, 2000 WI App 170 at ¶ 24. "The statutes governing the procedures for trying pleas of not guilty by reason of mental disease or defect have kept the responsibility phase and guilt phase attached in procedure even as they are detached in nature and purpose." *Id.*

¶ 19. Here, as in *Murdock*, we consider it important that the legislature has not separated the proceedings for the determinations of guilt and mental responsibility, as *Koput* suggests it could have. *Murdock*, 2000 WI App 170 at ¶ 27. The statute setting forth the procedures for both the guilt phase and the responsibility phase is a part of the chapter on criminal procedure and a defendant can only be found not guilty by reason of mental disease or defect if he or she first admits to the criminal conduct or is found guilty. *Id.* While we agree that *Koput* explains that the decision

made in the responsibility phase is not criminal in nature, the fact is that the mental responsibility phase remains a part of the criminal case in general. *Murdock*, 2000 WI App 170 at ¶ 27. As such, Langenbach is entitled to invoke his Fifth Amendment privilege at the mental responsibility phase without penalty. The Fifth Amendment is "as broad as the mischief against which it seeks to guard" and the privilege is fulfilled only when a criminal defendant is "guaranteed the right 'to remain silent . . . and to suffer no penalty . . . for such silence.' " *Estelle*, 451 U.S. at 467–68 (citation omitted).

## CONCLUSION

¶ 20. The trial court correctly denied the State's motion to call Langenbach as an adverse witness at the mental responsibility stage of his bifurcated trial. Langenbach's Fifth Amendment privilege against compelled testimonial self-incrimination continues through the mental responsibility stage of his criminal trial. We therefore affirm the order of the trial court.

*By the Court.*—Order affirmed.