ANN WALSH BRADLEY, J.
I 58. (dissenting). At issue in this case is whether a circuit court is required to conduct an on-the-record colloquy regarding the waiver of the right to testify at the responsibility phase of a bifurcated criminal trial.
¶ 59. Lagrone asserts that he had a right to testify at the responsibility phase of a bifurcated criminal trial and that an on-the-record right to testify colloquy is required. Even the State concedes that he has such a right, but contends that it is not a fundamental right requiring a colloquy.
¶ 60. Ultimately the majority concludes that "although a better practice," a circuit court is not required to conduct a right to testify colloquy at the responsibility phase of a bifurcated trial. In reaching its conclusion that no colloquy is required, the majority skews the record and contravenes controlling precedent.
¶ 61. Contrary to the majority, I conclude that precedent mandates more than a "better practice" admonition. Both the United States Supreme Court and Wisconsin precedent support the conclusion that there is a fundamental right to testify at the second phase of a bifurcated criminal trial conducted pursuant to Wis. Stat. § 97l.l65(l)(a).[1] A right to testify colloquy is required in order to ensure that a defendant *44 knowingly, intelligently and voluntarily waived the fundamental right to testify.[2] I would reverse the court of appeals and remand to the circuit court for an evidentiary hearing.[3] Accordingly, I respectfully dissent.
¶ 62. At the outset, I observe that the majority opinion skews the evidentiary record in this case. It obfuscates an important fact and minimizes others.
*45 ¶ 63. The majority obfuscates the fact that the circuit court failed to conduct a colloquy regarding the waiver of Lagrone's right to testify at either phase of the bifurcated trial. It correctly states that at the responsibility phase the circuit court neither informed Lagrone that he had a right to testify, nor asked Lagrone whether he was waiving his right to testify. See Majority op., ¶ 13. However, it fails to acknowledge that at the guilt phase of the trial the circuit court also failed to conduct the required colloquy regarding the right to testify.
¶ 64. The colloquy with Lagrone during the guilt phase of the bifurcated trial is buried in a footnote in the majority opinion. See majority op., ¶ 11 n.12. The circuit court did not question Lagrone about whether he understood that he was waiving his right to testify:
Do you understand that by pleading guilty in the first phase of this case, you give up all those rights, like the right to have a trial on whether you committed these crimes and the right to force the State to prove you committed these crimes and the right to present witnesses about whether you committed the crimes, all those rights, did you understand all those and understand that you're giving them up? Majority op, ¶ 11 n. 12.
¶ 65. Under State v. Weed, 2013 WI 85, ¶ 43, 263 Wis. 2d 434, 666 N.W.2d 485, this was an insufficient plea colloquy. Weed requires that a circuit court conduct an on-the-record, right to testify colloquy. "The colloquy should consist of a basic inquiry to ensure that (1) the defendant is aware of his or her right to testify and (2) the defendant has discussed this right with his or her counsel." Id., ¶ 43.
¶ 66. The majority skirts this deficiency by telling the reader only that "Lagrone does not challenge *46 the plea colloquy that occurred during the guilt phase of his bifurcated NGI proceedings." Majority op., ¶ 4. Further obscuring the deficiency in another footnote, the majority explains that "nothing in this opinion affects our instruction in State v. Weed that circuit courts conduct an on-the-record colloquy at a criminal trial, or at the guilt phase of bifurcated NGI proceedings, to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her fundamental right to testify." Majority op., ¶ 5 n.3.
¶ 67. Although Lagrone does not challenge the plea colloquy at the guilt phase of the trial, it is problematic to obscure this significant deficiency from the reader. The lack of a colloquy regarding Lagrone's right to testify and waiver of that right at the guilt phase of the bifurcated trial amplifies the absence of a colloquy at the responsibility phase. Without any colloquy at either stage in the proceedings, there is nothing in the record that indicates Lagrone was knowingly, intelligently and voluntarily waiving his right to testify.
¶ 68. Perhaps because there is nothing in the record regarding Lagrone's waiver of his right to testify, the majority relies on a hand-written note on a plea advisement and a waiver of rights form to suggest that Lagrone knew he had a right to testify. Tucked away in another footnote, the plea form discussion is minimized along with the majority's explanation for that form. See majority op., ¶¶ 11 n.ll, 56 n.29.
¶ 69. As relevant to the right to testify, it provides:
JSjf I give u? my Ight to tí?:iiy 010: present svicsnce-at-ral. ~7rac&'
*47 The court of appeals interpreted the hand-written notation ("True for phase I, not for II") to mean that Lagrone was preserving his right to testify at the second phase of the trial. State v. Lagrone, No. 2013AP1424-CR, unpublished slip op., ¶ 18 (Wis. Ct. App. Apr. 7, 2015) (explaining "Lagrone was giving up his right to testify in the first phase but not the second phase of the proceeding.").
¶ 70. Jettisoning the plain meaning interpretation of the court of appeals, the majority instead grasps at a curious alternative interpretation. By conflating the discreet right of the defendant to testify with the general right to present evidence and testimony, the majority interprets the hand written notation to mean "that Lagrone and his counsel indeed understood that Lagrone could present evidence and testimony during the responsibility phase." Majority op., ¶ 56 n.29.
¶ 71. If the majority is going to rely on its curious interpretation of a hand-written note to assert that Lagrone fully understood his right to testify and knowingly, intelligently and voluntarily waived that right at the responsibility phase, then it should not minimize this part of its analysis by relegating it to a footnote. Perhaps by tucking the discussion of the form in a footnote, the majority indicates that it is aware of how slender the reed is upon which it rests its assertion that Lagrone knowingly, intelligently and voluntarily waived his right to testify.
¶ 72. Not only does the majority opinion skew the record, it contravenes controlling precedent. Unlike the majority, I would follow well-established United States Supreme Court and Wisconsin prec *48 edent in reaching the conclusion that the fundamental constitutional right of a criminal defendant to testify on one's behalf applies during the second phase of a bifurcated criminal trial. Any waiver of that right must be subjected to an on-the-record colloquy to ensure that the waiver is knowingly, intelligently and voluntarily made.
¶ 73. The legal precedent underpinning my conclusion is straightforward. Although the right to testify at the second phase of a bifurcated criminal trial is an issue of first-impression before this court, the fundamental constitutional right of a defendant to testify on his own behalf is well-established. See Weed, 263 Wis. 2d 434, ¶¶ 39-40 (a circuit court must conduct a personal colloquy on-the-record in order to ensure that the defendant knowingly, intelligently and voluntarily waived the fundamental right to testify).
¶ 74. In Rock v. Arkansas, the United States Supreme Court concluded that the right to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. 44, 52 (citing Harris v. New York, 401 U.S. 222, 230 (1971)). When a criminal defendant has Fifth Amendment privilege against self-incrimination, there is also a corresponding right to testify in one's defense.[4]
¶ 75. As the Rock court explained, " [e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." Id. at 53 (citing Harris, 401 U.S. at 225). The Fifth Amendment's privilege against self-incrimination "is fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own *49 will." Id. (citing Malloy v. Hogan, 378 U.S. 1, 8 (1964) (emphasis removed)). Accordingly, the choice of whether to testify is an exercise of the constitutional privilege. Id.
1 76. In Wisconsin, the Fifth Amendment privilege applies beyond the guilty phase of the bifurcated criminal trial.[5] Over thirty years ago, this court determined that the Fifth Amendment privilege "continues at least until sentencing." State v. McConnohie, 121 Wis. 2d 57, 63, 358 N.W.2d 256 (1984). Twenty years ago, this court determined that a defendant retains his or her Fifth Amendment privilege while an appeal is pending or before the time for an appeal as of right or plea withdrawal has expired. State v. Marks, 194 Wis. 2d 79, 92, 533 N.W.2d 730 (1995).
¶ 77. For the past fifteen years, it has been well-established that the Fifth Amendment applies to the second phase of a bifurcated criminal trial. State v. Langenbach, 2001 WI App 222, ¶ 9, 247 Wis. 2d 933, 634 N.W.2d 916. As the Langenbach court explained, " [b]ecause there is a possibility that Langenbach could be sentenced in this matter if the jury finds him to be mentally responsible for his actions, his Fifth Amendment privileges survive his no contest pleas." Id.
¶ 78. Thus, the inexorable conclusion is that Lagrone has a Fifth Amendment right to testify at the second phase of his bifurcated criminal trial. The *50 United States Supreme Court instructs that the right to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. at 52 (citing Harris, 401 U.S. at 230). Under Wisconsin law, the Fifth Amendment privilege against compelled testimonial self-incrimination continues through the mental responsibility stage of a bifurcated criminal trial. Langenbach, 247 Wis. 2d 933, ¶ 20.
¶ 79. Despite the overwhelming weight of the law to the contrary, the majority concludes that the fundamental right to testify on one's own behalf at a criminal trial does not extend to the responsibility phase of bifurcated criminal trial. Majority op., ¶ 41. As observed above, in reaching this conclusion the majority contravenes both Unites States Supreme Court precedent and Wisconsin law.
¶ 80. The majority protests Rock's determination that the right to testify is a "necessary corollary" to the Fifth Amendment privilege against self-incrimination. According to the majority, the conclusion that the right to testify is available wherever the Fifth Amendment privilege is available "has no basis in the federal constitution and is impracticable." Majority op., ¶ 44. In its attempt to deny Lagrone his Fifth Amendment right to testify here, the majority creates a straw man out of the fear that every litigant in every proceeding —civil and criminal — will now have a right to testify.
¶ 81. The majority's fear of unlimited and impracticable expansion of the Fifth Amendment right to testify is unfounded. Lagrone never argues that the Fifth Amendment fundamental right to testify is applicable to every proceeding. Rather, the issue before the court in this case is limited to whether the Fifth Amendment right to testify applies to the second phase *51 of a bifurcated criminal trial, not whether it applies to every imaginable proceeding.
¶ 82. Relying on State v. Magett, 2014 WI 67, 355 Wis. 2d 617, 850 N.W.2d 42 and State v. Koput, 142 Wis. 2d 370, 418 N.W.2d 804 (1988), the majority misconstrues Wisconsin law by arguing that the responsibility phase of the bifurcated trial is not a criminal trial and therefore the rights afforded a criminal defendant do not apply.[6] According to the majority, the fundamental right to testify identified by the Rock court "is not some generalized right to testify; it is instead [t]he right to testify on one's own behalf at a criminal trial.' " Majority op., ¶ 40 (citing Rock, 483 U.S. at 51).
¶ 83. The majority disregards Wisconsin case law that is directly on point. In State v. Murdock, the court of appeals explained the interconnection between the first and second phases of a bifurcated criminal trial. 2000 WI App 170, ¶¶ 24-25, 238 Wis. 2d 301, 617 N.W.2d 175.
¶ 84. Relying on Koput, the Murdock court explained that the mental responsibility phase could have evolved as an entirely separate procedure from the guilt phase. Id., ¶ 24 (citing Koput, 142 Wis. 2d at 394). As Murdock correctly acknowledged, the statutes governing the bifurcated trial for NGI pleas remains in Chapter 971, which governs criminal procedure. The *52 legislature has "kept the responsibility phase and guilt phase attached in procedure even as they are detached in nature and purpose." Id. Thus, the Murdock court considered that "the responsibility phase has not been procedurally removed from the criminal proceedings." Id. at ¶ 25.
¶ 85. The majority fails to address Murdock head-on and instead attempts to distinguish it in a footnote. See Majority op., ¶ 44 n.22. According to the majority, the fact that the guilt and responsibility phases are attached in procedure is much more relevant to the question in Murdock of whether the jury waiver statute applies equally to both phases than it is to the constitutional question here. Id. The majority's analysis of Murdock is cursory and unpersuasive because it provides no reason why the wavier of a right might be different in this case as it relates to the bifurcated procedure.
¶ 86. Furthermore, in Langenbach, the court of appeals explained that the responsibility phase "remains a part of the criminal case in general." 247 Wis. 2d 933, ¶ 19. In the same footnote, the majority dispenses with Langenbach. Majority op., ¶ 44 n.22. It argues that a statement in the responsibility phase could only be incriminating for the purpose of some other proceeding and that " [i]n any event, that line of reasoning was apparently not essential to the Langen-bach court's holding." Id. Thus, the majority does not overrule either Langenbach or Murdock, but instead dismisses both opinions in a footnote.
¶ 87. Rather than follow Murdock and Langen-bach, the majority relies on differences relating to the defendant's burden of proof between the two phases of a bifurcated criminal trial in order to argue that the *53 second phase is not part of the criminal trial.[7] However, as Justice Gableman stated during oral argument, regardless of the different burden the stakes are the same:
But in this kind of case, if the defendant does not meet his or her burden, then they wind up like Mr. Lagrone going to the Wisconsin state prison system. And so I'm trying to wrestle with, and I'm wondering if you can help me to resolve, how it would be less important for the personal colloquy at the NGI phase as it is at the guilt or innocence phase?
The stakes are the same. Its prison or not prison.
¶ 88. Not only is the potential outcome after both phases of the trial the same, but the defendant's burden of proof in the second phase may make his or her testimony even more critical than during the first phase. Given that expert testimony is not a prerequisite to proving a mental disease or defect, it may be the defendant's own testimony that provides the most potent testimony in meeting the burden of proof. See Magett, 355 Wis. 2d 617, ¶ 41-44. By testifying, a defendant has the opportunity to take the stand, face the jury and explain his side of the events, hoping to persuade those who sit in judgment.
*54 ¶ 89. The majority's failure to recognize that the stakes are the same at both phases of a bifurcated criminal trial also impairs the majority's due process analysis. Its analysis rests in part on the faulty premise that it need not address the contours of Lagrone's due process right to testify because "he was afforded such an opportunity in this case." Majority op., ¶ 50. It seems to believe that because the circuit court asked whether Lagrone wished to present any further evidence, he could infer that the circuit court was asking whether he wished to testify. The analysis fails to recognize that the right to offer evidence and the right to testify on one's behalf are separate rights.
¶ 90. Although the majority concedes that the responsibility phase is "not necessarily exempted from the broad mandates of the Due Process Clause," its faulty premise leads the majority to abandon the Supreme Court's well-established two-step due process test. Majority op., ¶ 48. In a procedural due process analysis, the court asks first whether a liberty or property interest exists which has been interfered with by the State.[8] Kentucky Dep't. of Corr. v. Thompson, 490 U.S. 454, 460 (1989). Next, the court examines whether the procedures employed were constitutionally sufficient. Id.
¶ 91. The first step is readily met here. As the United States Supreme Court has determined, proce *55 dural due process protections apply when the defendant's interest is the loss of liberty as a result of incarceration. See, e.g., Morrissey, 408 U.S. 471, 481—82 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973). The second phase of a bifurcated criminal trial undeniably results in a loss of liberty. Either Lagrone will be committed to an institution for mental health treatment or he will be sent to prison.
¶ 92. In its conclusory treatment of the second step, the majority errs because it does not analyze whether the procedures employed were constitutionally sufficient. Although cases involving parole or probation may have required only a hearing with the opportunity to testify, not all situations calling for procedural safeguards require the same procedure. Morrissey, 408 U.S. at 481. The loss of liberty for Lagrone is even greater than that of a parolee or probationer, because he has not yet been sentenced or committed. Thus, the procedure that is appropriate for a parolee or probationer may be not sufficient for a criminal defendant.
¶ 93. The majority's analysis fails to recognize that the consequence of losing at the responsibility phase of a bifurcated trial is the same as the consequence of losing at the guilt phase. The stakes are the same — its prison or not prison. Because the stakes are the same at both the first and second phase of a bifurcated criminal trial, I conclude that due process requires the same procedural protection — a right to testify colloquy — at both phases of the bifurcated criminal trial.
¶ 94. Contrary to the majority, I conclude that precedent mandates more than a "better practice" admonition. Both the United States Supreme Court and Wisconsin precedent support the conclusion that *56 there is a fundamental right to testify at the second phase of a bifurcated criminal trial. A right to testify colloquy is required in order to ensure that a defendant knowingly, intelligently and voluntarily waived the fundamental right to testify. I would reverse the court of appeals and remand to the circuit court for an evidentiary hearing. Accordingly, I respectfully dissent.
¶ 95. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 When a defendant pleads not guilty by reason of mental disease or defect, the circuit court follows the procedure for a bifurcated trial set forth in Wis. Stat. § 971.165(l)(a) which provides:
*44 There shall be a separation of the issues with a sequential order of proof in a continuous trial. The plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second.
If the defendant pleads guilty or is found guilty by a jury during the first phase, the trial proceeds to the second phase. In the second phase, a jury determines whether "as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." Wis. Stat. § 971.15(1).

 Lagrone also asserts a claim under the Wisconsin Constitution. Article I, Section 8 of the Wisconsin Constitution states in part: "No person . . . may be compelled in any criminal case to be a witness against himself or herself." However, he does not argue this claim separately from his federal constitutional claim. Accordingly, we address the arguments as presented by Lagrone.

 Pursuant to State v. Garcia, 2010 WI App 26, ¶¶ 1, 9, 14, 323 Wis. 2d 531, 779 N.W.2d 718, when a circuit court fails to conduct a colloquy regarding the waiver of the right to testify, the defendant's remedy is an evidentiary hearing. The harmless error analysis set forth in State v. Nelson, 2014 WI 70, 355 Wis. 2d 722, 849 N.W.2d 317, does not apply because Lagrone filed his motion prior to this court's decision in Nelson. Additionally, Nelson arguably is distinguishable because it applies to the denial of a defendant's assertion of the right to testify, not a circuit court's failure to conduct a colloquy. Id. at ¶ 15-16.

 The Fifth Amendment privilege applies to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

 The majority acknowledges that Wisconsin's Fifth Amendment jurisprudence conforms generally with the U.S. Supreme Court jurisprudence. See Majority op., ¶ 43. As the U.S. Supreme Court explained in Lefkowitz v. Turley, 414 U.S. 70, 77 (1973), the Fifth Amendment privilege is applicable in "any Q proceeding, civil or criminal, formal or informal, where the answers might incriminate [an individual] in future criminal proceedings."

 In State v. Koput, this court determined that "the responsibility phase of the bifurcated trial is not an integral part of the criminal trial, but is rather a special proceeding in the criminal process. . . ." 142 Wis. 2d 370, 374, 418 N.W.2d 804 (1988). More recently, in State v. Magett, this court explained that the "history of trials involving NGI pleas demonstrates that the current responsibility phase has undergone a transformation from a criminal proceeding to something close to a civil trial." 2014 WI 67, ¶ 39, 355 Wis. 2d 617, 850 N.W.2d 42.

 First, the defendant, rather than the State, bears the burden of establishing mental disease or defect. See Wis. Stat. § 971.15(3). Second, the defendant's burden is "to a reasonable certainty by the greater weight of the credible evidence," rather than "beyond a reasonable doubt." Id. Third, the defendant needs only a five-sixths verdict, rather than a unanimous jury. Magett, 355 Wis. 2d 617, ¶ 39. Fourth, in contrast to a criminal trial, a judge may grant a motion to dismiss the NGI defense or direct a verdict in favor of the state if the defendant does not meet his burden." Id.

 With respect to the first step of the analysis, it is well-established that criminal defendants have a due process right to testify at a variety of stages during criminal proceedings. See, e.g., Boardman v. Estelle, 957 F.2d 1523, 1524 (9th Cir. 1992) (sentencing); Ashe v. North Carolina, 586 F.2d 334, 336 (4th Cir. 1978) (sentencing); Gagnon v. Scarpelli, 411 U.S. 778, 782, 786 (1973) (probation revocation); Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (parole revocation); see also Rock, 483 U.S. at 51 n.9.